OPINION OF THE COURT
Edward C. Alfano, J.
Petitioners, as owners of premises 1305 Kings Highway, Brooklyn, New York, bring this nonpayment summary proceeding to evict respondents for nonpayment of rent for the months of February, March, April and May, 1981 and for nonpayment of real estate taxes and water charges due pursuant to the terms of a lease dated May 1,1969 entered into between petitioners’ predecessors-in-title, as landlord and respondent Howard Stores Corporation (Howard), as tenant.
Howard sublet the premises to respondent Ripley Clothes Kingsway, Inc. (Ripley), which in turn sublet the *55 premises to respondent Burger King Corporation (Burger King).
The premises are presently occupied by respondent Creative Foods, Inc. (Creative), a franchisee of Burger King.
All of the afore-mentioned respondents have appeared in this proceeding.
Howard, the only tenant under the lease, admits in its answer that it owes the rent set forth in the petition and does not allege any setoff or any counterclaim thereto.
At the trial petitioners adduced evidence that in addition to a personal demand, a demand for rent was made by personal service on Howard of a five-day written notice dated April 7, 1981. Following the presentation of this proof the court granted petitioners’ motion under CPLR 3025 and 3026 to amend the petition so as to allege that the rent had been demanded personally and that a three-day notice had been duly served on Howard in accordance with the provisions of RPAPL 711 (subd 2).
The thrust of Howard’s defense is that no proper demand was made for the rent. Howard disputes that a proper personal demand was made and contends that petitioners’ written demand by way of the notice dated April 7, 1981 failed to meet the requirements of the three-day notice specified in RPAPL 711 (subd 2).
The issues were tried by this court without jury.
Howard Grabino (Grabino) testified that he purchased the premises in 1975 subject to the lease in question. In 1979 he conveyed the premises to his two children, the petitioners herein. However, he has continued to manage the premises for them.
Grabino further testified and the court finds that in February, 1981 Grabino, by telephone, requested Constance Moss (Moss), an officer of Howard (Secretary), to pay the February rent and that in late February, 1981 at a meeting in her office at 40 Flatbush Avenue Extension, Brooklyn, New York, he, referring to the petitioners, personally requested her to “pay the kids what you owe *56 them.” The court also finds that Moss replied, “You will get the rent.”
Since at the time of said exchange both Grabino and Moss knew that only the February, 1981 rent was due it is clear to the court that there was a meeting of the minds as to the amount involved, to wit: $1,528, the monthly rent specified in the lease.
The court therefore finds that a proper personal demand was made on Howard for the rent of February, 1981.
For the purpose of also establishing that a demand for the rent for February, March, and April, 1981 was made by way of service of a three-day notice pursuant to RPAPL 711 (subd 2), the petitioners rely upon the notice dated April 7, 1981 which formed the basis of petitioners’ prior holdover proceeding against the same respondents.
Said holdover proceeding was dismissed for reasons set forth at a later point in this decision.
The April 7 notice reads as follows:
“Eric H. Grabino
and
Amy M. Grabino
145 Central Park West
New York, New York 10023
CERTIFIED MAIL
RETURN RECEIPT REQUESTED
April 7, 1981
Howard Stores Corporation 40 Flatbush Avenue Extension Brooklyn, New York 11201
Re: 1305 Kings Highway
Brooklyn, New York 11229
Gentlemen:
This letter constitutes notice that you are in default in the payment of rent and additional rent, including real estate taxes and water and sewer charges, for the above-referenced Premises under Lease dated May 1, 1969, as follows:
*57 Rent Due:
February 1, 1981 $1,528.00
March 1, 1981 1.528.00
April 1, 1981 1.528.00
Real Estate Taxes Due:
January 1, 1981 1.969.00
April 1, 1981 1.969.00
Water Meter Charges Due:
October 17, 1980 130.38
Sewer Rental Charges Due:
October 17, 1980 37.09
Pursuant to the terms of the lease, said default must be cured and payment in full received by Landlord within five (5) days from the date of this letter, or the term of the Lease shall wholly cease and expire and you shall be required to vacate the Premises and deliver possession thereof to the Landlord as well as pay all sums thereupon due to Landlord.
Very truly yours,
Eric H. Grabino and (S) Amy M. Grabino (S)
Eric H. Grabino and Amy M. Grabino (Landlord)
cc: Howard Stores Corporation 1305 Kings Highway Brooklyn, New York 11229”
The respondents attack the validity of the use of the April 7 notice in the instant proceeding. They contend that the said notice was not served on Howard as required by the statutes.
RPAPL 711 (subd 2) requires that the three-day notice be served in accordance with RPAPL 735. The latter statute prescribes alternate manners of service one of which is personal service on the respondent.
The petitioners contend that personal service of said notice was made by process server Neil Simensky (Simensky) on Howard by delivery of a copy thereof to one Frank *58 Earle (Earle), a person authorized on behalf of Howard to accept service.
CPLR 311 (subd 1) provides that personal service on a corporation shall be made by delivery of process “to an officer * * * managing or general agent * * * to any other agent authorized by appointment or law to receive service”.
Simensky testified and the court finds that on April 7, 1981 he went to Howard’s main office at 40 Flatbush Avenue Extension, Brooklyn, New York, for the purpose of serving the notice and was confronted by Earle, a security guard employed by Howard. After Simensky advised Earle of his purpose, Earle called up to Howard for permission to accept the service and, having received authorization, accepted the notice for Howard.
Simensky also testified that on many occasions in the past Earle, on behalf of Howard, had accepted process from him after Earle received authority by telephone. Earle, in his testimony before the court, corroborated this fact. Moreover, the notice of petition and the petition in the proceeding at bar were served on Earle who accepted them on behalf of Howard. Respondents do not dispute that Earle was authorized in behalf of Howard to accept service of the notice of petition and petition.
However, respondents, through the testimony of (1) Irving Schneider, vice-president of Howard, (2) Moss, who in addition to being the secretary of Howard Clothes Corporation is also its general counsel, (3) Gloria Ross, Secretary to Moss and (4) Earle, made a monumental attempt to deny that Earle had authority to accept the April 7 notice, despite the fact that all of said witnesses admit that many times in the past Earle was given authority to accept process. They maintain, however, that on the occasion of the April 7 notice he had no such authority. All also concede that Earle gave the notice to Gloria Ross who in turn gave it to Moss.
A similar issue regarding the validity of service on a corporation was dealt with by the Court of Appeals in Fashion Page v Zurich Ins. Co. (50 NY2d 265). There the process server served a summons upon the secretary to a *59 vice-president of the corporation. The secretary had been identified by the defendant’s receptionist and by the secretary herself as a person authorized to accept service for the corporation. The Court of Appeals upheld the Supreme Court’s holding that the service was valid.
In response to that defendant’s argument that the secretary to the vice-president could not be said to be a managing agent because she did not possess general powers involving the exercise of judgment or discretion, and that she could not be considered an agent by appointment because she was never expressly authorized to accept process for the corporation, the court stated at pages 271-272:
“The history and purpose of CPLR 311 (subd 1) indicates, however, that it should not be read in such a narrow and technical manner.
“Over the years the Legislature has identified a large group of corporate personnel as agents for receipt of process * * * The trend has been to enlarge rather than diminish the list of those who may accept process on behalf of the corporation. When the CPLR was adopted in 1963, the Legislature added to the list the ‘cashier or assistant cashier or *** any other agent authorized by appointment or by law to receive service’ (see 1 Weinstein-KornMiller, op. cit., par 311.02). The statute, of course, should be liberally construed (CPLR 104).
“The purpose of CPLR 311 (subd 1) is to give the corporation notice of the commencement of the suit (Barrett v American Tel. & Tel. Co., supra; Tauza v Susquehanna Coal Co., supra). Delivery of the summons to the officials or employees designated by the Legislature fulfills the statutory aim since their ‘positions are such as to lead to a just presumption that notice to them will be notice to the * * * corporation’ (Tauza v Susquehanna Coal Co., 220 NY 259, 269 [115 NE 915, 918], supra [Cardozo, J.]). The presumption is unnecessary when the summons is served on a person the corporation itself has selected to accept service on its behalf. The corporation is free to choose its own agent for receipt of process without regard to title or position.
“A corporation may appoint an agent to accept service *60 without observing the formalities necessary to ‘designate’ an agent pursuant to CPLR 318.”
The court further stated at page 273: “In evaluating whether service is to be sustained, the circumstances of the particular case must be weighed.”
This court, on the basis of the credible testimony and after observing the demeanor of each of the said witnesses, determines that Earle was authorized to accept the notice on behalf of Howard.
The court, therefore, concludes that said notice was personally served on Howard in accordance with the statutes.
The respondents also contend that this court lacks jurisdiction because the April 7 notice was not served on Ripley.
The court finds this argument specious. Ripley is not a party to the paramount lease nor is it an assignee thereof. There being no privity between petitioners and Ripley no rent could be demanded of Ripley. Service of the notice on Ripley was therefore not required.
Respondents further urge that the doctrine of res judicata bars the relitigation of the April 7 notice in the present proceeding.
In this connection the records disclose that in March, 1981 prior to the instant proceeding, petitioners commenced a nonpayment summary proceeding against the respondents. That proceeding was discontinued without prejudice. On April 21, 1981 the petitioners commenced a holdover summary proceeding against the very same respondents. The holdover proceeding was predicated on petitioners’ termination of the lease under terms thereof because of Howard’s failure to pay the rent for February, March, and April, 1981 after having been served with the same aforesaid April 7 notice to cure said default. Said holdover proceeding was dismissed by Judge Bernard Fuchs for the reason that he found the notice to cure, as set forth in the lease, not to be a conditional limitation but a condition subsequent and could not form a basis for a summary holdover proceeding. Moreover, Judge Fuchs also determined that in any event the holdover proceeding *61 could not be maintained for the reason that the April 7 notice to cure the default in payment, having been served by mail and received by Howard two days after the date of the notice, gave Howard three days notice to cure instead of five days, as required by the lease.
Judge Fuchs in no way determined or even considered the issues present in the instant proceeding, such as whether there was personal service of the April 7 notice on Howard or whether the April 7 notice was a statutory three-day demand for the payment of rent under RPAPL 711 (subd 2). Nor were those issues pertinent to the former holdover proceeding.
The fact that Judge Fuchs determined that the April 7 notice was ineffective to terminate the lease in no way established that it was ineffectual as a demand for rent under RPAPL 711 (subd 2). The court finds that there is no basis for the application of res judicata or more appropriately, collateral estoppel.
In reference to collateral estoppel the Court of Appeals in Rudd v Cornell (171 NY 114, 127-128) stated as follows: “It is settled by the decisions of this court that a judgment is conclusive in a second action only when the same question was at issue in a former suit and the subsequent action was between the parties or their privies, and that the conclusive character of a judgment extends only to the precise issues which were tried in the former action”.
The respondents also take the position that even assuming, arguendo, that the doctrine of res judicata, more accurately collateral estoppel, does not apply, the termination of the prior proceeding which was predicated on the April 7 notice likewise terminated the notice and that without the service of a new notice as a predicate for the instant proceeding this court has no jurisdiction.
As supportive of the latter argument respondents cite the cases Weinberger v Driscoll (89 Misc 2d 675) and Haberman v Wager (73 Misc 2d 732).
The court finds both cases inapposite. They hold that the same 30-day notice terminating a tenancy pursuant to section 232-a of the Real Property Law may not be used in successive holdover proceedings where the first proceeding *62 was terminated. The holdings in the cited cases are not controlling in the circumstances present here. Unlike the facts present in the cited cases, the petitioners herein have not used the April 7 notice in two successive holdover proceedings but followed the terminated holdover proceeding by a nonpayment proceeding. In the prior case petitioners intended to use the notice to terminate the lease. In the instant proceeding the notice served to establish a written demand for rent. The court finds it inappropriate to analogize a notice, of termination of a tenancy to a written demand for the payment of rent which, a fortiori, invokes the lease. (BSR Housing Dev. Fund v Ford, 109 Misc 2d 445.)
Moreover, the reasoning in the Weinberger and Haber-man cases is not persuasive when related to the facts at bar. The rationale in both cases is that a new notice is essential in the second proceeding because the dismissal or withdrawal of the first proceeding would otherwise lull the tenant into a false sense of security. Here the respondents in no way could be lulled into a false sense of security for the reason that the dismissal of the holdover proceeding in effect established that the lease was not terminated. If respondents claim the right to possession under the lease they could in no way be led to believe that they would not be required to pay the rent. Moreover, it is inconceivable that Moss, an astute attorney and an officer of and for many years general counsel to Howard, would be lulled into any sense of security no less a false sense of security by the lack of a new notice especially since the testimony established: (1) that prior to February, 1981 Howard paid rent only after being reminded monthly by letter that it was in default; (2) that since then it failed to pay any rent, and, (3) that two prior proceedings based on that failure had been commenced by petitioners.
The court determines that neither the statutes nor case law required the service of a new notice and holds that it was proper to use the same notice in this subsequent nonpayment proceeding.
The respondents, however, further argue that assuming that the notice may serve as a basis for this proceeding, its *63 content fails to conform to the statutory requirement of RPAPL 711 (subd 2).
That statute requires the notice to advise the tenant that it pay the rent within three days or vacate the premises. A perusal of the aforesaid April 7 notice discloses that those requirements are abundantly met. Nor may Howard be heard to complain that the notice gave Howard five days to cure the default instead of three days.
The court finds that petitioners have failed to comply with the provisions of the lease insofar as their claim for unpaid taxes and water charges as additional rent. There is not evidence that the required 10-day notice to cure the default was given to Howard.
Petitioners have also failed to prove any demand for the May, 1981 rent.
This court notes with displeasure that throughout the litigation in the three proceedings between the parties herein the statute requiring a demand has been misused and abused and its purpose perverted by Howard’s wanton failure to pay the rent due under the lease. This defiance of its obligation to pay the rent is further exacerbated by Howard’s admission during the trial of the proceeding at bar that it had received all the rent to date from its sublessee, Burger King.
Howard has made a mockery of the shield provided by the Legislature to the tenant when it enacted the statute requiring the landlord to make a demand prior to commencing a nonpayment summary proceeding. Howard wielded the shield as a sword and subverted its purpose.
Respondents’ motions to dismiss the petition are denied.
Final judgment of possession for the petitioners against all respondents and money judgment for the petitioners against Howard in the sum of $4,584 representing rent for the months of February, March, and April, 1981. Issuance of the warrant stayed five days.