Arnold G. LEO, Daniel King, East Hampton Town Baymen's Association, Inc., Warren Hader, Montauk Boatmen's Association, Robert Gabrielson, New York State Commercial Fishermen's Association, Ralph Pastore and the United Fishermen's Association, Inc., Plaintiff,

v.

GENERAL ELECTRIC COMPANY, Defendant.

No. 86 CV 0061.

United States District Court, E.D. New York.

July 17, 1986.

Joan T. Harnes, Sidney B. Silverman, Silverman & Harnes, New York City, for plaintiffs Arnold Leo, et al.

Marjorie H. Mintzer, Edward Hart, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., for defendant General Elec. Co.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE

SHIRA A. SCHEINDLIN, United States Magistrate.

Plaintiffs brought an action in the Supreme Court of New York, Suffolk County, claiming economic loss due to defendant General Electric's ("GE") discharge of pollutants into the Hudson River. Plaintiffs, commercial fishermen and charter boat operators, allege that such toxic wastes contaminated striped bass and resulted in the Spring, 1985 sales ban of the fish. Plaintiffs seek ten million dollars in compensatory and punitive damages as well as injunc-

tive relief. On October 29, 1985, plaintiffs served GE with the summons and complaint in the state action.

On January 7, 1986, GE removed the action to the Eastern District of New York pursuant to 28 U.S.C. § 1441(b) (1982).[1] On January 10, 1986, plaintiffs served a motion to remand the action to state court pursuant to 28 U.S.C. § 1447(c) (1982)[2], because GE's removal petition had not been filed within the thirty-day period prescribed by 28 U.S.C. § 1446(b) (1982).[3] Plaintiffs contend that the statutory period commenced on October 29, 1985, the date of service of the summons and complaint. Defendant argues that the statutory period did not commence on that date because GE was not properly served. GE concedes that if service were proper, the thirty day limitations period expired prior to removal.

The Honorable Joseph M. McLaughlin referred the case to me to determine whether service was proper. On May 2, 1986 a hearing was held before me on this issue.

## I. SUMMARY OF THE TESTIMONY

### A. *Plaintiff's Testimony*

Process was served on GE by Leonard Witt ("Witt"), a licensed process server with twenty years experience. Affidavit of Leonard Witt, January 24, 1986 ("Witt Affidavit"). ¶ 1. In his affidavit, Witt stated that he was fully familiar with New York's rules regarding service of process on both individuals and corporations. *Id.* Witt further maintained that his business practice was to accept the representations of process recipients that they were authorized to accept service on behalf of a corporation. Transcript, May 2, 1986 Hearing ("Tr."), pp. 23–4.

---

1. Section 28 U.S.C. § 1441(b) (1982) provides that a defendant in a state court action may remove the action to the federal court having original federal question jurisdiction, regardless of the citizenship or residency of the parties.

2. Section 28 U.S.C. § 1447(c) (1982) provides in pertinent part that "[i]f at any time before final judgment it appears that the case was removed

improvidently ..., the district court shall remand the case."

3. Section 28 U.S.C. § 1446(a), (b) requires the removing defendant to file a verified petition with the appropriate federal district court within thirty days after service of the complaint.

On October 28, 1985, Witt was retained by plaintiff's counsel to effect service on GE. Tr. p. 6. The next day, plaintiff's counsel gave him a summons and complaint and told him to serve them on GE at its Melville, Long Island location. Tr. p. 18. Witt testified that he wrote the address of the Melville branch on the back of an envelope. Plaintiff's Exhibit 2. According to Witt, plaintiff's counsel also provided him with several other GE addresses where he might attempt service if unsuccessful at Melville.[4] Tr. p. 18. Witt testified that he made no independent investigation regarding the proper location within New York for serving GE, nor did he discover who GE had authorized to accept service on its behalf.

Upon arriving at the Melville site, Witt followed a sign to the service and parts department. Defendant's Exhibit C—GE Parts & Service Roadsign. This department is a consumer facility which offers machine parts to the public and accepts televisions for repair. Tr. p. 55. Witt notified the man behind the counter that he had legal papers to serve and inquired as to who was authorized to accept service. Witt Affidavit ¶ 2. The employee directed him to the building's front entrance where he should dial extension 204 on the wallphone and ask for "Bob" "Maloon" or "Mollo." Tr. p. 8. According to the employee, this person would then tell Witt who was authorized to accept service. Tr. p. 28.[5]

Although Witt could not recall the employee's name, he did note a physical description of the man on the same envelope he had used for the Melville address. Plaintiff's Exhibit 2. The envelope also reflected the telephone number and phonetic spelling of "Maloon." *Id.*

Witt then proceeded to the lobby of a different part of the GE facility. Tr. p. 29. This lobby is separated from the building interior by a wall with locked glass doors which lead inside. Defendant's Exhibit G—photograph of lobby. The lobby is not attended by a receptionist, but a wallphone is available for visitors to contact GE employees. Tr. p. 64, Witt Affidavit ¶ 2. This wallphone is positioned above a large desk, adjacent to the solid lobby wall. Defendant's Exhibit J—photograph of GE lobby and wallphone. On the desk was a phone directory on which the names Peggy Boone and Bob Malool were referenced to extension 204. Tr. p. 59–60.

Upon entering the lobby Witt dialed extension 204 which was answered by a female. Tr. pp. 8, 16. Witt testified that he asked for "Mr. Bob Maloon" or "Mallo" and disclosed that he had legal papers to serve on GE. Tr. p. 8. The woman responded that Mr. Malool was unavailable, but instructed Witt to wait in the lobby. *Id.* Witt testified that at 12:10 p.m. the woman came out to the lobby and identified herself as Mr. Malool's secretary. Tr. p. 9–10. According to Witt, he reiterated that he had legal papers to serve on GE and the woman answered that she would accept them. He then asked her if she was authorized to do so and she answered in the affirmative. *Id.* Witt handed her the legal papers, asked her name and left. Witt Affidavit ¶ 3. He then wrote her name and physical description on the envelope he had used earlier. Plaintiff's Exhibit 2. That same day, Witt prepared an affidavit of service. Plaintiff's Exhibit 1.

### B. *Defendant's Testimony*

Process on GE was delivered to Margaret (a/k/a Peggy) Boone ("Boone") who has been a GE Melville employee for over fifteen years. Affidavit of Margaret Boone, January 17, 1986 ("Boone Affidavit") ¶ 4. Since August 26, 1985 she has worked as a secretary administrator to Robert Malool, Service Manager and Frank Gosik, Training Manager. Boone Affidavit ¶ 1. Boone's duties include answering tele-

---

**4.** Witt testified that although he noted such alternate GE locations on paper, he discarded the notes after making service at Melville. Tr. p. 18.

**5.** Witt's affidavit conflicts with his testimony at the hearing. In his affidavit he stated that the employee told him that Malool was authorized to accept process. Witt Affidavit ¶ 2.

phones, typing and paying bills. Boone Affidavit ¶ 2. Boone testified that she has never accepted legal papers on behalf of GE nor has she been trained to handle service of process. Tr. p. 84. In addition, Boone testified that she was aware that she was not authorized to accept legal papers for GE. Tr. p. 88.

On October 29, 1985, at about 12:15 p.m., Boone claimed she walked past the building lobby while on her way to the cafeteria, and noticed a man, Witt, using the lobby phone. Tr. p. 58. She stated that the man appeared to be randomly dialing different extensions in order to get someone to come down to the lobby to take papers. Boone Affidavit ¶ 6.

Boone testified that she walked into the lobby and asked Witt if she could help him. Tr. p. 77. In response, Witt stated he had papers for a GE employee. *Id.* Boone claimed that Witt then handed her a brown eight-by-eleven envelope, without a name or return address.[6] While she looked at the envelope, Witt quickly left the building. Boone Affidavit ¶¶ 6, 8. Boone further declared she never received a telephone call, conversed with, or disclosed her name to Witt. She denied ever having represented she was authorized to accept service of process. *Id.* Upon receipt, Boone immediately gave the unopened envelope to Robert Malool. *Id.* ¶ 8. He then gave the legal papers to another GE secretary who mailed it to GE's divisional center in Kentucky. *Id.*

In addition to Boone, Richard Kandell, the in-house counsel to the GE Eastern sales and service department, testified at the hearing. Tr. pp. 93–106. Kandell testified that GE is a domestic New York corporation. The Melville facility is one of twelve New York area product service locations handling consumer requests for service of appliances. Tr. pp. 96, 103. During October, 1985 Kandell stated the Melville location was headed by Tim White, the regional manager for product service operations. Tr. p. 104. Kandell explained that

Robert Malool, the manager of product services at the Melville branch, supervises the service technicians including employees behind the consumer counter. Tr. p. 96. Malool reports to Tim White. *Id.*

Kandell testified that since 1976, GE has had an established and internally documented divisional policy which specifies that field personnel are not authorized to accept service of legal papers. Defendant's Exhibits K, L—GE Internal Policy Memos On Legal Matters, Tr. p. 97–8. However, GE has authorized a registered agent to accept service in Schenectady, New York. Tr. p. 95. In addition, Kandell testified that service of process can be made on GE corporate directors located at 570 Lexington Avenue, Manhattan, and at GE corporate officers located in both Schenectady and Syracuse, New York. Tr. p. 103.

## II. DISCUSSION

### A. *Legal Principles*

 Service of process in a state court action must be valid under both the United States Constitution and the state statute under which service is made. *Bomze v. Nardis Sportswear, Inc.,* 165 F.2d 33, 35 (2d Cir.1948). Constitutional due process requires that service provide notice "reasonably calculated, under all the circumstances," to inform parties of the action and provide an opportunity to respond. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). No one definition exists as to what is constitutionally adequate notice; rather, the practicalities and peculiarities of each individual case must be considered. *Id.* at 314–15, 70 S.Ct. at 657–58.

### 1. *Section 311(1) of the CPLR*

N.Y.Civ.Prac.Law ("CPLR") § 311(1) (McKinney 1972) requires that personal service upon a corporation be made by delivering the summons to an "officer, di-

---

**6.** This testimony directly conflicts with Witt's affidavit in which he states he did not enclose the legal papers in an envelope when serving GE. Witt Affidavit ¶ 3.

rector, managing or general agent, or cashier or assistant cashier or any other agent authorized by appointment or by law to receive service." Service made pursuant to § 311(1) meets the due process requirements of *Mullane*. *See* N.Y.Civ.Prac. § 311, McLaughlin, Practice Commentary (McKinney 1972).

Whether service of process in the instant case satisfies the requirements of CPLR § 311(1) is a mixed question of law and fact. *See Bomze*, 165 F.2d at 37.

### a. *Definition of Managing Agents*

The courts of New York define a managing agent as

> some person invested by the corporation with general powers involving the exercise of judgment and discretion, as distinguished from an ordinary agent or attorney, who acts in an inferior capacity and under the direction and control of superior authority, both in regard to the extent of his duty and manner of executing it.

*Jacobs v. Zurich Insurance Co.*, 53 A.D.2d 524, 525, 384 N.Y.S.2d 452 (1st Dep't 1976) (quoting *Taylor v. Granite State Provident Ass'n.*, 136 N.Y. 343, 346, 32 N.E. 992 (1893)). A managing agent should be so integrated with the corporation as to justify an inference that notice to the managing agent is notice to the corporation. *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 269, 115 N.E. 915 (1917); *Grabino v. Howard Stores Corp.*, 111 Misc.2d 54, 59, 443 N.Y.S.2d 626 (Civ.Ct. Kings County 1981).

The manager of a corporate branch office is a managing agent who can be served pursuant to CPLR 311(1). *See Doris Trading Corp. v. SS Union Enterprise*, 406 F.Supp. 1093, 1097 (S.D.N.Y.1976). In *Doris*, service was upheld when made on a foreign corporation's New York branch manager, who supervised the operations of this sales branch. Similarly, in *Din v. Long Island Lighting Co.*, 463 F.Supp. 654, 656 (E.D.N.Y.1979), the *acting* office manager of the defendant's district office

was properly served on behalf of the employer.

### b. *The Status of Malool and Boone*

The management functions of Malool are not in dispute. As manager of a GE customer service branch, Malool supervises the entire operation, with organizational responsibility for the branch's sales, employees and public relations. He is in a position of responsibility involving judgment and discretion, similar to the corporate branch managers in *Doris* and *Din*.[7] Accordingly, Malool is a managing agent of GE. Thus, personal service on GE can be effectuated by service on Malool pursuant to CPLR 311(1).

By contrast, Peggy Boone is *not* a managing agent. Boone's secretarial job functions are of a clerical nature. She has no supervisory duties and exercises little or no discretion. Boone is not a "managing agent" as defined by *Taylor*. *See Arce v. Sybron Corp.*, 82 A.D.2d 308, 312–14, 441 N.Y.S.2d 498 (2d Dep't.1981)(company receptionist does not qualify as a managing agent pursuant to CPLR § 311(1)).

### 2. *The Expansion of § 311 and the Concept of Fair Notice*

In *Fashion Page, Ltd. v. Zurich Insurance Co.*, 50 N.Y.2d 265, 428 N.Y.S.2d 890, 406 N.E.2d 747 (1980), the New York Court of Appeals upheld service delivered to a corporate employee other than one enumerated in CPLR § 311(1), based on such employee's apparent authority. In *Fashion Page*, the process server went to the corporate office and asked defendant's receptionist who could accept process. In accordance with instructions, he then delivered the summons to a vice-president's secretary, who confirmed her authority to accept process on behalf of the corporation. *Fashion Page*, 50 N.Y.2d at 270, 428 N.Y.S.2d 890, 406 N.E.2d 747. Although the secretary was not an agent for process under CPLR § 311(1), the service was

---

**7.** While Malool's supervisor, Tim White, Regional Manager, works out of the Melville location, this does not detract from GE's grant of authority to Malool. Malool performs the same job functions as the other eleven New York GE branch managers.

made in a manner which, objectively viewed, was calculated to give the corporation fair notice of the lawsuit. *Id.* at 273, 428 N.Y.S.2d 890, 406 N.E.2d 747.

In upholding service, the court in *Fashion Page* noted that "[t]he trend has been to enlarge rather than diminish the list of those who may accept process on behalf of the corporation." *Id.* at 271, 428 N.E.2d 890, 406 N.E.2d 747. The court approved service on those corporate employees below managing agent status, who have either been given such actual authority by their corporation or who have improperly assumed such authority. *Id.* at 272, 428 N.Y.S.2d 890, 406 N.E.2d 747. When a process server acts reasonably in serving a corporate employee who displays apparent authority to accept such service, the fault lies with the defendant corporation and service will be upheld. *Id.* at 274, 428 N.Y. S.2d 890, 406 N.E.2d 747.

"[T]he process server cannot be expected to know the corporation's internal practices." *Id.* at 272, 428 N.Y.S.2d 890, 406 N.E.2d 747.[8] He "has a right to assume that corporate employees whose duties include meeting and guiding visitors will act honestly and co-operatively" when he attempts to serve process at a corporation's regular place of business. *Belofatto v. Marsen Realty Corp.*, 62 Misc.2d 922, 924, 310 N.Y.S.2d 191 (1970) (process served on employee of corporate defendant upheld when both receptionist and recipient confirmed latter's authority to accept process). Nevertheless, the process server must do what is reasonable to see that notice is properly delivered, which includes, going to the corporation's regular place of business, relying on company employees to identify proper persons to accept service and delivering the summons according to their directions.

A number of courts have followed the lead established in *Fashion Page*. In *Ross v. Colorado Outward Bound School, Inc.*, 603 F.Supp. 306, 308 (W.D.N.Y.1985), service of process was made on a school "administrator" who did not have actual authority to receive service. Nonetheless, service was upheld because the administrator never refused to accept service, the service was calculated to give fair notice and the service resulted in redelivery to the appropriate person. *See also McBride v. Schenectady*, 110 A.D.2d 1000, 1002, 488 N.Y.S.2d 288 (3d Dep't 1985) (process served on *former* employee of defendant corporation upheld when such person was cloaked with apparent authority to accept and process server made reasonable inquiry); *Von Thaden v. S.J. Groves & Sons Co.*, 97 A.D.2d 677, 469 N.Y.S.2d 172 (3d Dep't 1983)(service of process upheld when process server acted reasonably and the accepting corporate employee indicated he was authorized to accept service); *De Vore v. Osborne*, 78 A.D.2d 915, 432 N.Y.S.2d 919 (3d Dep't 1980)(service of process upheld when process server acted reasonably, and the substitute office manager did not indicate he was not authorized to accept service); *Sullivan Realty Organization, Inc. v. Syart Trading Corp.*, 68 A.D.2d 756, 761, 417 N.Y.S.2d 976 (2d Dep't 1979) (service of process upheld when delivered to receptionist-secretary with authority to accept process).

### 3. *Redelivery*

In *McDonald v. Ames Supply Co.*, 22 N.Y.2d 111, 291 N.Y.S.2d 328, 238 N.E.2d 726 (1968), a case in which service was found to be improper, the highest court of New York embraced the principle of redelivery. Specifically, the court noted that service will be upheld if

a) a process server acts with *due diligence* in attempting to fulfill the statutory requirements of personal delivery[9]

---

8. In *Fashion Page*, the employees had established a practice of accepting service. Defendants assertion that the instant case is distinguishable because Boone had no such established procedure, is without merit. *Fashion Page* held that service of process can be upheld based on a recipient's *apparent* authority. *Id.* at 272, 428 N.Y.S.2d 890, 406 N.E.2d 747.

9. Although the term "due diligence" is not explicitly defined, *McDonald* requires, at a minimum, that the process server ascertain that the

b) but nevertheless serves a person not authorized to accept service and

c) that person then redelivers the papers to one who is authorized to accept service. The redelivery must be "so close both in time and space that it can be classified as part of the same act." *Id.* at 115, 291 N.Y.S.2d 328, 238 N.E.2d 726 (quoting *Green v. Morningside Heights Housing Corp.*, 13 Misc.2d 124, 125, 177 N.Y.S.2d 760 (Sup.Ct.N.Y.Co.) *aff'd*, 7 A.D.2d 708, 180 N.Y.S.2d 104 (1st Dept.1958)). The Court emphasized that "upholding service in such cases does not endanger the statutory scheme by encouraging careless service." *Id.* at 116, 180 N.Y.S.2d 104.

Several courts have expanded the concept of redelivery established in *Green* and have upheld the validity of service upon a defendant corporation's receptionist. *See Knits 'N' Tweeds, Inc. v. Jones New York*, 442 F.Supp. 1129, 1130 (E.D.N.Y.1978) (service of process on the defendant corporation's receptionist was upheld because redelivery provided actual and prompt notice of the pending litigation); *Conroy v. International Terminal Operating Co.*, 87 A.D.2d 858, 859, 449 N.Y.S.2d 294 (2d Dep't 1982) (service upheld when acting receptionist redelivered to authorized person one minute thereafter); *Shedlin v. State Tax Commission*, 62 A.D.2d 806, 809, 406 N.Y.S.2d 596 (3d Dep't 1978) (service upheld when receptionist disavows authority to accept process but retains service papers and redelivers them to authorized person the following day).

Defendant argues that this line of cases is inapplicable because it is limited to situations involving persons attempting to evade service. Defendant's reading of these cases is simply in error. The cases cited above involve situations where service on the managing agent was either impractical or impossible despite the process server's "due diligence." The situation here is iden-

tical. According to Witt, he telephoned Malool, the managing agent of the GE facility. In response, he was told that Malool was unavailable. Thus, despite Witt's "due diligent" efforts, service on Malool was both impractical and impossible, leaving Boone as the only person Witt was able to serve.

In *Shedlin*, the court noted three factors which it considered important in upholding the validity of redelivery service, namely, the process server's good faith and diligent efforts, the reasonableness utilized in fulfilling the statutory mandate, and, the effectiveness of the notice. *Id.* at 808–09, 406 N.Y.S.2d 596. These three factors were present in this case. Boone, an employee was the only person Witt was able to serve. Witt acted diligently and GE received prompt and effective notice. In the Practice Commentaries to Section 311(1) Judge McLaughlin suggests that

> if a corporation is subject to jurisdiction, and if the summons is eventually delivered to a servable official, the better approach is to seek to sustain jurisdiction rather than become bogged down in highly cerebral distinctions between types of agents.

N.Y.Civ.Prac. § 311, McLaughlin, Practice Commentary (McKinney 1972).

### B. *Application of Law to Facts*

GE's denial of personal service shifts the burden of proof to plaintiffs to substantiate their allegations of proper service. *DeZego v. Bruhn*, 99 A.D.2d 823, 472 N.Y.S.2d 414 (2d Dep't), *appeal dismissed*, 63 N.Y.2d 770 (1984). Before reaching a decision on the legal adequacy of the service, the court must determine what occurred on the day in question.

The Witt and Boone affidavits and testimony regarding the October 29, 1985 service of process on GE are in direct conflict.

recipient is a company employee. *Id.* 22 N.Y.2d at 116, 291 N.Y.S.2d 328, 238 N.E.2d 726. In *McDonald*, the court held that papers served upon a building receptionist which were subsequently redelivered to the proper corporate agent was invalid because, *inter alia*, the process server

failed to ascertain whether the building receptionist was employed by the defendant. *Id.* Here, Boone, who met Witt in the building lobby not only *was* a GE employee but also indicated that she was authorized to accept process.

Both witnesses cannot be correct in their memories of the events. Thus the court, reluctantly, is required to accept one version of the facts rather than the other. After considering the testimony, exhibits and affidavits, I find that Witt's version of the events must be accepted as true. This determination is based on common sense, an evaluation of the witnesses' demeanor and the corroboration of Witt's testimony by documentary and photographic evidence.[10]

Having determined that Witt's version of the events are true, the court must next decide whether his actions in making service were adequate to properly effectuate service on GE.

■ Witt's conduct meets the objective *Fashion Page* standard of servicing GE in a manner calculated to give the corporation fair notice of the impending litigation. *Fashion Page*, 50 N.Y.2d at 270, 428 N.Y. S.2d 890, 406 N.E.2d 747. Witt went to GE's branch location, and there inquired of two GE employees, the counterman and Boone, as to who was authorized to accept process. He followed the directions of each, and according to Boone's declaration that she could accept service, completed his service of process. Accordingly, I find that Witt reasonably relied on Boone's apparent authority to accept process. Since Witt was told by Boone over the telephone that Malool, the managing agent, was unavailable to accept service, it was reasonable for him to believe that the employee assisting him would accurately state her authority. It was further reasonable for Witt to believe that Boone would in fact have such actual authority. Accordingly, I find that the October 29, 1985 service on GE was valid.

■ Alternatively, assuming *arguendo* that Boone did not have the apparent authority to accept service, the redelivery theory also sustains the service on GE. Boone, who approached Witt from behind the locked lobby doors was clearly a GE employee. It is uncontested that upon receiving process, secretary Boone immediately redelivered the papers to Malool, the managing agent authorized to receive process. Thus, Witt's delivery of process to Boone constituted service of process upon GE when Boone immediately redelivered the papers.

## III. CONCLUSION

In accordance with the expanding interpretations of CPLR 311(1), the service here upon GE was adequate to give the defendant fair notice of the litigation.

> Objectively viewed, in the light of the circumstances, the service made was calculated to give the corporation fair notice and, in fact, resulted in the immediate redelivery of the summons[ ] to a proper person.

*De Vore v. Osborne*, 78 A.D.2d at 916, 469 N.Y.S.2d 172.

For all of the reasons set forth above, it is respectfully recommended that plaintiff's October 29, 1985 service on GE be sustained.

A copy of this Report and Recommendation is being mailed today to all parties, who are hereby advised that objections to the report may be served and filed with the district court, with a copy to me, within ten (10) days of receipt.

---

**10.** By contrast, Boone had only two months of secretarial experience, and contradicted herself on significant points regarding her alleged lobby encounter with Witt. Upon cross-examination, Boone contradicted her affidavit and admitted it was physically impossible for her to see anyone in the lobby dialing the phone from where she walked inside. Tr. p. 77. Moreover, Boone admitted that she had not seen Witt holding any papers when she first noticed him in the lobby. *Id.*