AGAPITO ARCE et al., Respondents, v SYBRON CORPORATION, Appellant.

Second Department, July 27, 1981

APPEARANCES OF COUNSEL

*Lester Schwab Katz & Dwyer (Steven B. Prystowsky* and *Allan Fudim* of counsel), for appellant.

*Rothfeld, Ostrow & Lawrence (Richard S. Lawrence* of counsel), for respondents.

**OPINION OF THE COURT**

DAMIANI, J. P.

Plaintiff Agapito Arce is a medical doctor who served as staff surgeon at La Guardia Hospital in Queens County, New York. On February 10, 1976 he was about to commence an operation when a light above the operating table fell from the ceiling and struck him on the head, causing serious physical injuries. The defendant Sybron Corporation is a domestic corporation which installed and serviced the light.

On February 8, 1979, two days before the expiration of the three-year personal injury Statute of Limitations (CPLR 214), plaintiffs' counsel sent a process server to an office in Westchester County from which the Castle Company, the medical products division of defendant Sybron Corporation, conducted business. There the process server delivered a summons with notice to Mary Monahan, a person whom he designated in his affidavit of service as "managing agent" of Sybron. On the same day the process server delivered a copy of the summons with notice to the Sheriff of Westchester County.

On February 27, 1979, some 17 days after the expiration of the Statute of Limitations, plaintiffs served the summons upon the Secretary of State pursuant to the Business Corporation Law. Section 304 of that law provides that

the Secretary of State shall be the agent of every domestic corporation upon whom process against the corporation may be served. Section 306 provides for the method of service upon the Secretary of State at his office in Albany. There is no contention in this case that the mode of service upon the Secretary of State was improper.

On February 27, 1979 defendant Sybron moved to dismiss pursuant to CPLR 3211 (subd [a], par 8) for lack of personal jurisdiction. At this time its counsel did not know that plaintiff had served the Sheriff of Westchester County and the Secretary of State. The motion to dismiss was based solely upon the ground that Mrs. Monahan, the person who had been served at its Westchester office, was not a person to whom process for a corporation could be delivered under CPLR 311.

Upon receipt of the defendant's motion papers, plaintiffs' attorney forwarded copies of the affidavit of service upon the Sheriff of Westchester County and the Secretary of State in an effort to get defendant's counsel to withdraw the motion to dismiss for lack of jurisdiction. The latter then filed a supplemental affirmation in support of that motion contending that plaintiffs had served the Sheriff of the wrong county and that accordingly the Statute of Limitations was not extended by such service. In opposition, plaintiffs contended that service upon Mary Monahan was proper and that a proper Sheriff had been served thereby extending the Statute of Limitations for 60 days during which time the Secretary of State was served.

After a hearing, Special Term denied the motion to dismiss for lack of jurisdiction upon the authority of the holding of this court in *Sullivan Realty Organization v Syart Trading Corp.* (68 AD2d 756) and upon the ground that defendant had been served pursuant to section 306 of the Business Corporation Law.

Defendant has appealed contending that its motion to dismiss for lack of personal jurisdiction should have been granted. This is yet another of those cases in which the parties have confused the defenses of lack of personal jurisdiction and the Statute of Limitations (cf. *Morrison v Foster*, 80 AD2d 887). CPLR 304 states quite clearly in

relevant part that "[a]n action is commenced and jurisdiction acquired by service of a summons." There is no time limit involved in serving process. A summons can be properly served many years after a cause of action has accrued and jurisdiction over the person of the defendant will be obtained by our courts. The date of service of the summons is also an important base from which certain time periods, including the Statute of Limitations, are measured (1 Weinstein-Korn-Miller, NY Civ Prac, par 304.01). However, because the Statute of Limitations suspends only the remedy and not the right *(Hulbert v Clark,* 128 NY 295; Siegel, New York Practice, § 34) and can therefore be waived (CPLR 3211, subd [e]), the fact that service was made after the expiration of the period of limitation has no effect whatever on its validity or upon the acquisition of jurisdiction over the person of the defendant who was served.

In this case defendant moved to dismiss under CPLR 3211, specifying but one ground, namely, that plaintiffs lacked jurisdiction over its person (CPLR 3211, subd [a], par 8). The answer to this contention required no hearing and was manifest from the very papers defendant submitted on the motion. Personal jurisdiction over defendant Sybron, a domestic corporation, was certainly obtained when plaintiff served the Secretary of State.

The real issue in this case is whether plaintiffs' action is barred by the Statute of Limitations. Although dismissal upon that specific ground (CPLR 3211, subd [a], par 5) was not sought by defendant at Special Term, it has been raised by defendant and argued in the briefs on this appeal and in the interests of judicial economy we consider it now (see Siegel, New York Practice, § 258, p 319; cf. *Wolfe v Bellizzi,* 58 Misc 2d 773).

CPLR 203 (subd [a]), states that "[t]he time within which an action must be commenced * * * shall be computed from the time the cause of action *accrued* to the time the claim is *interposed."* (Emphasis added.) This is a negligence action to recover damages, *inter alia,* for personal injuries for which the time limit is three years (CPLR 214, subd 5). The plaintiffs' causes of action accrued on Febru-

ary 10, 1976, the date Agapito Arce was injured. They had to be interposed on or before February 10, 1979.

At the time service was attempted in this case CPLR 203 (subd [b]), stated, insofar as relevant, that:

"(b) Claim in complaint. A claim asserted in the complaint is interposed against the defendant * * * when:

"1. the summons is served upon the defendant; or * * *

"5. when the action to be commenced will be tried in a court not located within the city of New York, the summons is delivered for service upon the defendant to the sheriff in a county in which the defendant resides, is employed or is doing business, or if none of the foregoing be known to plaintiff after reasonable inquiry, then in a county in which defendant is known to have last resided, been employed or been engaged in business, or, *where the defendant is a corporation, in a county in which it may be served, or in the county where the cause of action arose,* if the summons is served upon the defendant within sixty days after the period of limitation would have expired but for this provision" (emphasis added).

There were multiple attempts at service in this case. For the purpose of ascertaining whether plaintiffs acquired jurisdiction of the person of the defendant it was only important to know that at least one of those services was good. Because the service upon the Secretary of State was clearly valid it was unnecessary to examine the validity of the other attempts at service in order to ascertain that in personam jurisdiction was obtained. However, since a claim is interposed as of the date of valid service, the service upon the Secretary of State which took place 17 days after the expiration of the three-year period did not, in and of itself, constitute timely interposition of plaintiffs' claim. We must now, therefore, decide whether service upon Mary Monahan was good or whether service upon the Sheriff of Westchester County had the effect of extending the statute for 60 days.

It is our view that service of process upon Mary Monahan was not good service upon the corporate defendant and therefore did not constitute a timely interposition

of plaintiffs' claims. CPLR 311 (subd 1) states that personal service upon any domestic or foreign corporation may be made by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service".

Plaintiffs contend that Mary Monahan was "managing agent" for defendant Sybron because, in the words of the process server, "[t]here was no one else available for service at the defendant's corporate office located in Hartsdale, New York, and accordingly, service could only be made upon MARY MONAHAN." The testimony adduced at the hearing established that the main office of defendant Sybron was located in Rochester, New York. The work performed at the Hartsdale office in Westchester County involved the management of the New York metropolitan area service district for the Castle brand products produced by defendant's medical products division. Mary Monahan was a receptionist employed at that office whose principal duties included taking calls from users of the defendant's products, and routing the users' complaints to the proper service representative who would call in from time to time. Whatever paperwork was generated by the service representative would then be processed by Mrs. Monahan and sent on to the Rochester office.

On February 8, 1979 plaintiffs' process server went to the office building where defendant's office was located. He observed the listing "Sybron Corporation" in the lobby directory and proceeded to defendant's office. There he met a woman, later identified as Mary Monahan, who was separated from the reception area by a glass enclosed booth. The process server delivered a copy of the summons to Mrs. Monahan, she examined it, showed it to a gentleman who was standing behind her, and then attempted to return it to the process server, stating that "this is Castle Company; we're a division of Sybron * * * Sybron's in Rochester". She refused the summons but the process server threw it back through the reception window where it landed on her desk. The man Mrs. Monahan consulted was Gordon Marshall, a branch field manager for defendant who traveled with its service representatives in the field and did not

regularly work out of the Hartsdale Office. Plaintiffs have made no claim that Marshall was served or that he was one of the persons enumerated in CPLR 311 (subd 1) to whom process for the corporate defendant could be validly delivered (cf. *Green v Morningside Hgts. Housing Corp.*, 13 Misc 2d 124, 125, affd 7 AD2d 708).

The proof establishes that Mary Monahan was a low level clerical employee who possessed no supervisory or administrative duties. She specifically told the process server that she was unauthorized to accept service and he was not directed to her by other employees of the defendant as a proper person upon whom service could be made. This case is thus governed by our recent holding in *Colbert v International Security Bur.* (79 AD2d 448, 452-455, mot for lv to app den 53 NY2d 608) and not by *Sullivan Realty Organization v Syart Trading Corp.* (68 AD2d 756, *supra*) in which the proof established that the receptionist in question had for years accepted the service of process without rebuke by her superiors, thereby giving rise to a strong inference that she was an "agent authorized by appointment" to receive process, which inference was not rebutted by the corporation so as to avoid a finding that in personam jurisdiction over it had been acquired.

The remaining question is whether service on the Sheriff of Westchester County sufficed, in effect, to extend the Statute of Limitations by 60 days, thereby constituting the later service upon the Secretary of State a timely interposition of plaintiffs' claims. Defendant argues that plaintiffs served the wrong Sheriff. An understanding of the problem requires a review of the history and rationale behind the rule which extends the Statute of Limitations upon delivery of a copy of a summons to the Sheriff.

The Sheriff is, among other things, the officer of the court whose duty it is to serve the court's process and execute its mandates within the county in which he holds office (54 NY Jur, Sheriffs, Constables, and Police, § 79; Crocker, Duties of Sheriffs, Coroners and Constables [3d ed, 1890], § 26). From the early days of the common law in England no suit began and no process was served but by the Sheriff (Murfree, Law of Sheriffs [2d ed, 1890],

§ 2). In accordance with that rule, the early common law of the State of New York was to the effect that the delivery of a proper writ to the Sheriff with a bona fide and absolute intention to have it served constituted the commencement of an action *(Brown v Van Duzen,* 11 Johns 472; *Van Vechten v Paddock,* 12 Johns 178, 181; *Bronson v Earl,* 17 Johns 63, 65; *Burdick v Green,* 18 Johns 14; *Visscher v Gansevoort,* 18 Johns 496; *Ross v Luther,* 4 Cow 158).

In the revised statutes adopted in 1828 it was first provided that an action to recover for debt or damages against a corporation was commenced when a summons was issued "to the sheriff of the county in which such corporation was located by law, or in which the place of transacting its business was situated, with the intent to be actually served; and * * * such process was duly returned." (2 Rev Stats [1st ed], p 299, § 38; p 347, § 1, subd 2; p 458, §§ 4, 5.) This act logically provided that the summons could not be delivered to just any Sheriff in order to constitute commencement of an action against a corporation because then, as now, a Sheriff's powers as an officer of the court could only be exercised within the county of his election *(Hill v Haynes,* 54 NY 153; cf. County Law, § 650). Hence the act provided that the summons was to be delivered to the Sheriff of the county in which the officers of the corporation to be served were most likely to be found, namely the county in which it was located by law or where it transacted business (2 Rev Stats [1st ed], p 458, § 5). Delivery of the summons to the Sheriff of the wrong county would not constitute commencement of the action because that Sheriff could not leave his jurisdiction to effectively serve it.

The Field Code of 1848 worked a sweeping revision of the way in which actions were to be commenced. Under prior practice there were three different modes of commencing an action at law and there was yet another method for commencing a suit in equity (First Report, Commissioners on Practice and Pleadings [1848], p 131). The Field Code provided that all civil actions were now to be commenced by the service of a summons (Code of Procedure of 1848, § 106) which could be served either by the Sheriff of the county in which the defendant could be found or by any other person, not a party to the action (Code of

Procedure of 1848, § 112). For Statute of Limitation purposes, however, the former rule was retained and an action against a corporation was "deemed commenced" as of the date the summons was delivered to the Sheriff of the county in which such corporation "was established by law, or where its general business was transacted, or where it kept an office for the transaction of business" provided that such delivery was "followed by the first publication of the summons, or the service thereof, within sixty days." (Code of Procedure of 1850, § 99.) Thus, it was under the Field Code that any natural person who was not a party to the action was first authorized to serve a summons. If the defendant proved elusive and private persons could not effectuate service, the plaintiff could still engage the services of the public official whose duty it was to serve process and who was experienced in that field, namely the Sheriff. The manifest rationale behind the 60-day provision was to give the Sheriff a reasonable time to find the defendant within his jurisdiction and effectuate service. This extension also permitted the plaintiff to complement the efforts of the Sheriff by continuing his own attempts to find and serve the defendant (*Cohoes Bronze Co. v Georgia Home Ins. Co.*, 243 App Div 224).

Subsequent practice acts continued to specify and limit the appropriate Sheriff to whom the summons was to be delivered for service upon a corporation (see Code Civ Pro, § 399; Civ Prac Act, § 17), the Civil Practice Act of 1920 stating, for example, that where the defendant was a corporation, the summons had to be delivered to the Sheriff, or if he was a party, to the coroner of the county "in which it is established by law or wherein its general business is or was last transacted or wherein it keeps or last kept an office for the transaction of business."

The CPLR did not continue the prior wording, providing instead that the plaintiff must deliver the summons to the Sheriff of "a county in which it [the corporation] may be served" (CPLR 203, subd [b], former par 4, now par 5). CPLR 311 specifies the officers, employees or agents to whom process for a corporation must be delivered but imposes no limitation on the place within the State where they may be served. The revisers of the CPLR suggested

the "county in which it may be served" wording of CPLR 203 (subd [b], par 5) in an effort to be "consistent with the service provision" of CPLR 311, under which "[the] corporation may be served by delivering the summons to [one of the named persons] in any county where he is found" (Second Preliminary Report [1958], Advisory Committee on Practice and Procedure, p 49). Since it is conceivable that the named persons might be "found" at various times anywhere within the State, it has been suggested that CPLR 203 may be read to extend the Statute of Limitations for 60 days upon delivery of the summons to an officer specified in CPLR 311 in any county in the State (1 Weinstein-Korn-Miller, NY Civ Prac, par 203.17). The Weinstein-Korn-Miller treatise attempts to resolve the ambiguity by concluding that: "A more sensible approach would limit compliance to a county where one of the corporation's officers or employees who can be served has either his dwelling or his place of business. Some limitation is implied in the text of paragraph 5 since the phrase 'in a county in which it may be served' is redundant if every county in the state is included." (1 Weinstein-Korn-Miller, NY Civ Prac, par 203.17; see, also, McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR, C:203:7, p 117.) The issue then is whether the foregoing suggested interpretation of the statute should be adopted by this court. In determining that issue we must consider a series of recent amendments to CPLR 203 (subd [b], par 5) (L 1976, ch 722, § 1, as amd by L 1977, ch 494, § 1, as amd by L 1979, ch 404, § 1). At the time of the fiscal crisis of New York City in the mid-1970's its legislative representative proposed relieving the Sheriff of the City of New York from the economically "unsound function" of serving summonses and casting the duty to receive such summonses upon a court clerk who would not be under a duty to attempt to make service. Apparently a major motivation for the proposed change was to generate revenue in the form of filing fees (because an index number would have to be purchased at the time of filing) without the necessity of performing any real service for the fee (see Memorandum of Legislative Representative of City of New York, 1977 McKinney's Session Laws of NY, p 2354).

The 1977 amendment (L 1977, ch 494, § 1), which governed at the time that service was attempted in this case, made two changes in CPLR 203 (subd [b], par 5) with respect to service on corporations. First, in all actions in which the defendant was a corporation the plaintiff could obtain a 60-day extension of the Statute of Limitations by serving the appropriate official (either Sheriff or court clerk) of "a county in which it may be served, *or in the county where the cause of action arose*" (emphasis added). Second, with respect to actions to be tried in a court outside the City of New York the summons was still to be "delivered for service upon the defendant" to the Sheriff, but in actions triable in the City of New York, the summons was to be "filed with the clerk of the court" in a county within the city where the corporate defendant might be served or where the cause of action arose.

These amendments are relevant here because they are plainly in conflict with the original purpose behind the 60-day extension, namely to give the Sheriff, whose job it was to serve process, a reasonable time to find the defendant within his jurisdiction and effectuate service. The previous wording of the act required the plaintiff to deliver the summons for service upon the defendant to the Sheriff of a county in which it was reasonable to conclude that the defendant could be found because he, she or it either lived, worked or carried on business there. Under the statute as amended, delivery of the summons for service upon the defendant to the Sheriff of the county in which the cause of action arose might be quite futile since the defendant might never have resided or worked there and might have had nothing to do with that county except for the acts giving rise to the plaintiff's cause of action. Similarly a filing of the summons with a court clerk in a county in which the defendant actually resides or works does not advance the original purpose of the statute since the clerk has no duty to attempt service on the defendant.

In short we now have a hybrid statute. In the situations in which the plaintiff must file the summons with a county clerk in the City of New York, the extension is obtained simply by the technical act of filing and serves no purpose other than as a means of giving the plaintiff an extra 60

days to find the defendant. In situations in which the summons must be delivered to the Sheriff for service upon the defendant, the extension serves its original purpose (except where the Sheriff chosen is the Sheriff of the county in which the action arose but in which the defendant neither resides nor works) and it also permits the plaintiff to continue his search for the defendant for an additional 60 days *(Cohoes Bronze Co. v Georgia Home Ins. Co.*, 243 App Div 224, *supra)*.

The primary consideration in construing a statute is to ascertain and give effect to the intention of the Legislature (McKinney's Cons Laws of NY, Book 1, Statutes, § 92). The recent amendments to CPLR 203 (subd [b], par 5) have so changed the statute that it is difficult indeed to ascertain that legislative intent. The purpose of the statute as amended could be to give the plaintiff the benefit of a 60-day extension of the Statute of Limitations simply by reason of the filing with or delivery to the appropriate official. If that was the intent of the Legislature however, why was some simple expedient such as filing with the county clerk in the county in which the action was pending not chosen, rather than the partial retention of the former scheme whereby the appropriate official to whom the summons was to be delivered or with whom it was to be filed was located in a county having some relation to the residence or place of business of the defendant? As shown above the only purpose of that requirement was to help insure that the defendant was located within the jurisdiction of the official, and that he could then make service. Faced with this confusion, the courts have resorted to requiring strict compliance with the statute as written (see *Dominquez v De Tiberus*, 78 AD2d 848, affd 53 NY2d 778, overruling *Bromley v Cosmatos*, 75 AD2d 798).

It is our view that despite the confusion engendered by the recent amendments, CPLR 203 (subd [b], par 5), insofar as applicable to this case, must be construed as the Weinstein-Korn-Miller treatise has suggested to require delivery of the summons to the Sheriff of a county in which one of the officers, directors, employees or agents of the corporation enumerated in CPLR 311 (subd 1) either has his dwelling or place of business (1 Weinstein-Korn-Miller,

NY Civ Prac, par 203.17). The record in this case establishes that the defendant has its headquarters in Rochester, that most of its officers and directors live in or near Monroe County, and that none live or work in Westchester County. There is no proof that any general agent, cashier or assistant cashier or other agent authorized by appointment or by law to receive service is similarly amenable to process in Westchester County. However, it is our view that the hearing before Special Term failed to adequately explore the question of whether Steven Frederick, the employee of the defendant who was in charge of the Hartsdale office in Westchester County, was a "person invested by the corporation with general powers involving the exercise of judgment and discretion" to act on its behalf and was therefore a "managing agent" within the meaning of CPLR 311 (see *Taylor v Granite State Provident Assn.*, 136 NY 343, 346). If Frederick was a managing agent within the contemplation of the law, then delivery to the Sheriff of Westchester County, where he had his place of business, was sufficient to extend the Statute of Limitations by 60 days and the subsequent service upon the Secretary of State, constituted a timely interposition of plaintiffs' claim. If it is found that he was not a managing agent, defendant's motion to dismiss should be granted.

Accordingly, the order appealed from should be reversed, and the matter remitted to the Supreme Court, Nassau County, for a further hearing in accordance with the foregoing opinion.

TITONE, MANGANO and RABIN, JJ., concur.

Order of the Supreme Court, Nassau County, dated July 31, 1979, reversed, without costs or disbursements, and matter remitted to the Supreme Court, Nassau County, for further proceedings consistent herewith.