**M. PRUSMAN, LTD. and Sahar Insurance Co., Ltd., Plaintiffs,**

v.

**ARIEL MARITIME GROUP, INC., et al., Defendants.**

No. 88 Civ. 8300 (RWS).

United States District Court, S.D. New York.

Aug. 10, 1989.

Waesche, Sheinbaum & O'Regan, P.C., New York City, for plaintiffs; by John R. Keough, III, of counsel.

Ronald Saffner, New York City, for defendants.

SWEET, District Judge.

Defendants Ariel Maritime Group, Inc. ("Ariel"), Charles Klaus & Co., Ltd. ("Klaus") (d/b/a Javelin Line ("Javelin")), Joshua Dean & Co., Ltd. ("Dean"), Florence Pawlowski ("Pawlowski") (a/k/a Florence Wlezen), Martyn C. Merritt ("Martyn Merritt"), and Mary Anne Merritt ("Mary Anne Merritt") (a/k/a Mary Anne Pawlowski) (collectively, the "Defendants") have moved to dismiss the complaint pursuant to Rule 12(b)(5), Fed.R.Civ.P., for improper service of process,[1] and Pawlowski, Klaus, and Dean have moved to dismiss the complaint pursuant to Rule 12(b)(2), Fed.R. Civ.P., for lack of personal jurisdiction. For the reasons set forth below, the motions are denied as to all the Defendants, except Pawlowski.

*The Parties*

*A. The Plaintiffs*

The Plaintiffs are corporations incorporated and maintaining offices in Israel.

*B. Ariel*

Ariel is a corporation with a place of business at Suite 1100, 90 West Thirty-Ninth Street, New York, New York.

*C. Klaus*

The Defendants contend that Klaus is a Hong Kong corporation with a principal place of business in Hong Kong. According to the affidavit of B. Singh ("Singh"), who identified himself as being "associated" with Klaus:

2. [Klaus] does not maintain any officers in the United States, nor does it have any directors, managers, employees or agents in the United States. Neither does it advertise, maintain a phone number or any office in this jurisdiction.

3. Since 1/2/87, the prior agency agreement between [Klaus] and [Ariel] was cancelled, and since that date, [Klaus] has not, through an agent or otherwise, done business or transacted business in the United States.

Singh Aff. ¶¶ 2, 3.[2]

Also in support of their motion to dismiss, the Defendants submitted a letter dated January 2, 1987 from W.W. Chu to Ariel (attention: Martyn Merritt) on Klaus letterhead cancelling Ariel's agency agreement with Klaus (the "Chu Letter") and an agreement dated January 2, 1987 between Klaus and Maritimo Comercio Empresa Panama S.A. ("Maritimo") transferring Klaus's Javelin division to Maritimo (the "Maritimo Agreement"). Contradicting statements in Saffner's affirmation and Singh's affidavit that Klaus has no directors in the United States, the Chu Letter says: "Your wife being a notary public was kind enough to be listed as a director of our firm with her nice mother."

The Plaintiffs contend that Klaus is the majority shareholder and/or owner of Dean

---

1. The initial notice of motion, affidavits, and memorandum of law submitted May 19, 1989 in support of the motion to dismiss gave no indication that Martyn and Mary Anne Merritt joined the other defendants in the motion challenging service of process. Accordingly, plaintiffs M. Prusman Ltd. ("Prusman") and Sahar Insurance Co. Ltd. ("Sahar") (collectively, the "Plaintiffs") moved for a default judgment against Martyn and Mary Anne Merritt. In his reply affirmation in support of the Defendants' motion to dismiss, the Defendants' counsel, Ronald Saffner ("Saffner"), stated: "Contrary to defendants' (sic) allegation, defendant Martyn C. Merritt and Maryann (sic) Merritt have joined with all defendants in making this motion to dismiss this lawsuit on jurisdictional grounds, and accordingly are not in default." Saffner Reply

Aff. ¶ 7. The Defendants' initial motion papers notwithstanding, the court will assume Martyn and Mary Anne Merritt join this motion to dismiss. The Plaintiffs' motion for a default judgment therefore is denied.

2. Exhibit 3 to the Defendants' Notice of Motion is the affidavit of S.Y. Yang ("Yang"), who also identifies himself as being "associated" with Klaus. The affidavit was neither signed nor notarized, although Saffner had written on the affidavit: "Note: Affidavit not signed by Mr. Yang as of 5/2/89, but I expect to bring original signed affidavit to court on or before return date of motion." Instead of submitting Yang's original signed and notarized affidavit, Saffner subsequently filed the Singh Affidavit.

and conducts business in New York in connection with the subject matter of this action through its Javelin division. They dispute the Defendants' assertion that Klaus has no office or agent in New York, noting that as of May 1988 the building directory in the lobby of 90 West Thirty–Ninth Street listed Klaus as having an office in Suite 1100 (the same space Ariel uses) and that Saffner in a letter to the court dated June 6, 1988 stated that "Ariel is the agent for Charles Klaus & Company."

The Plaintiffs challenge the authenticity of the Singh affidavit, noting that it omits any reference to the place it was executed, is notarized by Mary Anne Merritt (a co-defendant in the action), bears no notarial stamp, and fails to identify the state or county authority of the notary. They also question the validity of the Chu Letter and the Maritimo Agreement, noting that no Klaus corporate records refer to "W.W. Chu" and that the Plaintiffs produced these documents after Saffner had represented to the court that no Klaus documents existed to be produced. Moreover, more than a year-and-a-half after Klaus purportedly transferred Javelin to Maritimo, this court issued an order finding Javelin to be a division of Klaus. *See M. Prusman Ltd. v. The M/V Nathanel*, No. 85 Civ. 9485, slip op., at 2 (S.D.N.Y. July 25, 1988). Saffner has not objected to that finding.

### D. Dean

The Defendants contend that Dean is a British corporation with its principal place of business in Manchester, England. In support of their motion to dismiss, the Defendants have submitted the affidavit of Deepak Manrai ("Manrai"), who identifies himself as "principal" of Dean. Manrai states:

> At no time, has or did [Dean] do business or transact any business in New York or for that matter in the United States. It does not maintain any offices, telephone numbers nor advertises in New York. It has no directors, officers, employees or agents in the United States.

Manrai Aff. ¶ 2.

The Plaintiffs assert that Dean maintains a place of business at Suite 1100, 90 West Thirty–Ninth Street, New York, New York. They also contend that Dean is the majority shareholder and/or owner of Klaus and that Dean has conducted business in New York in connection with the subject matter of this action through Klaus's division, Javelin. Contrary to statements in Saffner's affirmation and Manrai's affidavit that Dean has no officers or directors in the United States, Dean's corporate records—copies of which the Plaintiffs submitted in opposition to the motion to dismiss—indicate that Martyn and Mary Anne Merritt serve as Dean's directors and that Mary Anne Merritt is Dean's Secretary.

Noting that Dean's corporate records nowhere refer to "Deepak Manrai," the Defendants suggest that Manrai may be a fictional character the Plaintiffs invented. They also challenge his affidavit's validity, noting that the Manrai affidavit—like the Singh affidavit—omits any reference to the place it was executed, is notarized by Mary Jane Merritt (a co-defendant in the action), bears no notarial stamp, and fails to identify the state or county authority of the notary.

In his reply affidavit, Saffner claims that the Plaintiffs have committed a "monumental error" by confusing defendant "Joshua Dean & Co., Ltd." (a British corporation) with "Joshua Dean & Co., Ltd." (a Grand Cayman Corporation). According to Saffner:

> Other than a similar sounding name, Joshua Dean (Great Britian (sic)) has no relationship whatsoever with Joshua Dean (Grand Cayman). Martyn Merritt and Maryann (sic) Merritt have a relationship with the Great Britian (sic) company, but have absolutely no connection with the Joshua Dean (Grand Cayman) company. It is the Grand Cayman company which allegedly has a connection with [Klaus].

Saffner Reply Aff. ¶ 3.

### E. Martyn and Mary Anne Merritt

Martyn and Mary Anne Merritt are married. They live in New Rochelle, New

York and maintain an office at Suite 1100, 90 West Thirty–Ninth Street, New York, New York. The Plaintiffs allege that Martyn Merritt is Ariel's President, that Martyn and Mary Anne Merritt are "director[s], officer[s] and/or shareholder[s], and/or beneficially owned shares and/or controlled Klaus, Ariel and/or ... Dean," Complaint ¶¶ 9, 10, and that Martyn and Mary Anne Merritt are the majority shareholders of Ariel.

### F. Pawlowski

Pawlowski resides in Chicago, Illinois and is Mary Anne Merritt's mother. In her affidavit submitted in support of the motion to dismiss, Pawlowski stated:

> 1. .... I am not a resident of the State of New York, neither do I do business or transact any business in the State of New York.
>
> 2. My only possible connection to this lawsuit is that I am the mother of defendant Maryann (sic) Merritt.

Pawlowski Aff. ¶¶ 1, 2. According to the Chu Letter, Pawlowski serves as a Klaus director.

### Prior Proceedings

On April 25, 1988, this court entered a judgment for the Plaintiffs against Javelin for $28,682.08 plus interest and costs in a maritime action arising from a loss the Plaintiffs suffered to its shipment aboard the M/V NATHANEL (the "Javelin Judgment"). *See M. Prusman Ltd v. The M/V Nathanel,* 85 Civ. 9485 (S.D.N.Y.1985) (RWS). Javelin has yet to pay that judgment.

According to the complaint, Martyn and Mary Anne Merritt formed Klaus, Dean, and Ariel to prevent the Plaintiffs from collecting the Javelin Judgment and to shield themselves from personal liability. The Plaintiffs contend that these corporations and Javelin are undercapitalized alter egos for Martyn and Mary Anne Merritt.

On November 18, 1988, the Plaintiffs sued the Defendants in this action to collect the Javelin Judgment, seeking damages amounting to $50,000 for the Javelin Judgment and all costs and attorney's fees the Plaintiffs have incurred trying to collect that judgment. The Plaintiffs urge the court to pierce the corporate veil to enforce the Javelin Judgment against any and all of the Defendants.

### Service of Process

On March 14, 1989, Stephen Sheinbaum ("Sheinbaum"), a lawyer with Waesche, Sheinbaum & O'Regan, P.C. and counsel for the Plaintiffs, travelled to Martyn Merritt's and Ariel's office at Suite 1100, 323 West Thirty–Ninth Street, New York, New York to serve the summons and complaint. When Sheinbaum told the receptionist he wished to see Martyn Merritt, the receptionist made a telephone call, then told him someone would be with him in a moment.

Shortly, a woman—later identified as Carol L. Bacon ("Bacon")—entered the reception area, introduced herself as Martyn Merritt's secretary, and asked who Sheinbaum represented. When Sheinbaum told her he was with Waesche, Sheinbaum & O'Regan, P.C., Bacon told him she would be back momentarily, then left the reception area. When she returned, Bacon told Sheinbaum she could take the papers and would see that Martyn Merritt got them. She acknowledged receipt on the back of the summons with a handwritten note saying:

> Carolyn L. Bacon
> Secretary to:
> Mr. M.C. Merritt
> 3/14/89
> Ariel Maritime

In support of their motion to dismiss, the Defendants have submitted Bacon's affidavit, which states:

> 1. I was formerly employed by [Ariel] as a typist/file clerk. I am not, and never was an officer, director, general agent, managing agent, cashier or assistant cashier of [Ariel], [Dean], [or Klaus], nor was I ever authorized to accept service of process on behalf of said companies.
>
> 2. I do not know [Pawlowski], have never met her, do not know who she is, or where she lives, and accordingly, I do not believe that I am a person of suitable

age and discretion to accept service on her behalf.

Bacon Aff. ¶¶ 1, 2.[3] Bacon does not deny that she had authority to accept service on Martyn Merritt's behalf.

The Defendants contend that delivering the summons and complaint to Bacon as described above constituted improper service of process as to each defendant. Under Rules 4(c)(2)(C)(i) and 4(d)(1) and (3), Fed.R.Civ.P., service of process upon individual and corporate defendants is proper if it meets New York state's service of process requirements. Applying those standards here, service was proper as to Martyn Merritt, Mary Anne Merritt, Ariel, Dean, and Klaus, but not as to Pawlowski.

### A. The Individual Defendants

Under New York law, a plaintiff can serve an individual defendant by, among other means, "delivering the summons within the state to the person to be served," N.Y.Civ.Prac.L. & R. § 308(1) (McKinney's Supp.1988), or "delivering the summons within the state to a person of suitable age and discretion at the actual place of business ... of the person to be served and by either mailing the summons to the person to be served at his last known residence or by mailing the summons by first class mail to the person to be served at his actual place of business...." *Id.* at § 308(2). At issue here is whether delivering the summons and complaint to Bacon as described above—with no subsequent mailing—constituted proper service of process upon the individual defendants under New York law.

### 1. Martyn Merritt

New York courts recognize that delivery of the summons and complaint to an individual defendant's secretary constitutes valid service of process under section 308(1), *id.*, if the secretary indicates that he or she is authorized to accept papers on the defendant's behalf. *See, e.g., Conforti v. Beekman Downtown Hosp.,* 79 A.D.2d 968, 435 N.Y.S.2d 284 (1st Dep't 1981);

*Sparacino v. Winner,* 82 A.D.2d 753, 440 N.Y.S.2d 25, 26 (1st Dep't 1981); *Slagen v. Marwill,* 78 Misc.2d 275, 356 N.Y.S.2d 511, 513 (Sup.Ct.1974). In *Conforti,* for example, the First Department recognized valid service of process where:

> The process server arrived at the defendant's office but was not permitted by the secretary to see the defendant as he was busy with patients. The secretary then stated that she was authorized to accept service of the summons.

435 N.Y.S.2d at 284. Similarly, *Slagen* found service to be valid where:

> The secretary advised the process server that the doctor would be unable to see her even for a minute or less of his time. The process server attempted to make an appointment but was told it would be impossible for him to see her at any time. The process server then advised the secretary of the purpose of the visit. The secretary then stated that she would accept the summons and see that the doctor personally received it. The doctor did receive the summons the same day.

356 N.Y.S.2d at 513.

Here, delivery of the summons and complaint to Bacon, Martyn Merritt's secretary, constituted proper service of process as to Martyn Merritt. When Sheinbaum arrived at Martyn Merritt's office and asked to see him, the receptionist placed a phone call that prompted Bacon to come to the reception area. Sheinbaum told her he was a lawyer, and Bacon left the reception area, presumably to consult with Martyn Merritt. Bacon then returned to the reception area and told Sheinbaum she could take the papers and would give them to Martyn Merritt. She acknowledged receipt on a copy of the summons, describing herself as Martyn Merritt's secretary. In her affidavit submitted in support of the motion to dismiss, Bacon does not deny that she was authorized to accept service on Martyn Merritt's behalf.

---

**3.** Unlike the Singh and Manrai affidavits, Bacon's affidavit is notarized properly, bearing the signature and notary stamp of Vincent A. Murphy, who is authorized as a notary in Queens County, New York with a commission that expires January 31, 1991.

### 2. Mary Anne Merritt

According to Saffran's reply affirmation, Mary Anne Merritt joins the other defendants in the motion to dismiss for improper service of process. However, she has submitted no affidavit in connection with this motion, and Saffran has offered no description of her relationship with Martyn Merritt or Bacon concerning service of process. The dearth of facts in the record makes determination of this issue difficult.

According to the complaint, both Mary Anne Merritt and her husband Martyn maintained offices at Suite 1100, 90 West Thirty–Ninth Street, where Sheinbaum delivered copies of the summons and complaint to Bacon. There is no evidence that Bacon was Mary Anne Merritt's secretary—when she acknowledged service on the summons, Bacon only identified herself as secretary to Martyn Merritt and Ariel. However, as discussed above, Bacon properly accepted the papers as Martyn Merritt's representative. In light of the fact that Mary Anne Merritt joins in this motion and does not deny receiving the summons and complaint, it can be assumed that Martyn Merritt then delivered the papers to her.

At issue is whether Martyn Merritt's delivery of the summons and complaint to Mary Anne Merritt constituted proper service of process. Generally "spouses are not ... each other's agents for service of process." *City of New York v. Chemical Bank,* 122 Misc.2d 104, 470 N.Y.S.2d 280, 285 n. 3 (Sup.Ct.1983). However, New York courts recognize that serving a summons and complaint upon one spouse may constitute valid service of process as to the other spouse under some circumstances. *See, e.g., Buscher v. Ehrich,* 12 A.D.2d 887, 209 N.Y.S.2d 941 (4th Dep't 1961) (finding valid service where defendant's wife found sealed envelope addressed to defendant beneath the mail slot in the entrance to their home, opened it to find a copy of the summons, then delivered the summons together with the envelope to her husband when he returned home after 5:00 p.m. that day); *Pitagno v. Staiber,* 53 Misc.2d 858, 280 N.Y.S.2d 178 (Sup.Ct.1967) (finding valid service where process server went to defendants' home and, with wife within sight and hearing, delivered summonses for both husband and wife to husband who answered the door).

Here, Sheinbaum travelled to an office allegedly maintained by both Martyn and Mary Anne Merritt and delivered copies of the summons and complaint to a secretary authorized to accept service on Martyn Merritt's behalf. There is no evidence indicating whether or not Mary Anne Merritt was present at the office when Sheinbaum arrived. Martyn Merritt then delivered the summons and complaint to his wife, although there are no facts indicating whether he did so at the office or later when he arrived home. In light of Mary Anne Merritt's failure to offer any evidence in support of her challenge to the service of process and the reasonable inferences that can be drawn from the facts alleged in the complaint and set forth in Sheinbaum's affidavit, Mary Anne Merritt's motion to dismiss is denied.

### 3. Pawlowski

Service of process as to Pawlowski is invalid. In their affidavits, both Pawlowski and Bacon deny that Pawlowski authorized Bacon to accept service for her. Moreover, nothing in the record indicates that Martyn Merritt—through Bacon as his representative—could accept service for Pawlowski.

### B. The Corporate Defendants

Under New York law, a plaintiff may serve a corporation by, among other means, delivering the summons and complaint "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y.Civ.Prac.L. & R. § 311 (McKinney's Supp.1988). As a general rule, delivering the summons and complaint to a lower-level employee—such as a receptionist or secretary—does not constitute personal service upon the corporation. *See Arce v. Sybron Corp.,* 82 A.D.2d 308, 441 N.Y.S.2d 498, 501–02 (2d Dep't 1981).

However, a corporation can authorize an employee other than those persons listed in section 311(1) to accept service on the corporation's behalf. *See Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 406 N.E.2d 747, 750, 428 N.Y.S.2d 890, 893 (1980). Recognizing that a "process server cannot be expected to know the corporation's internal practices," the New York Court of Appeals has found valid service where "the process server has gone to [the corporation's] offices, made proper inquiry of the defendant's own employees, and delivered the summons according to their directions." *Id.* 406 N.E.2d at 751, 428 N.Y.S.2d at 893-94. In determining whether service under these circumstances is valid, the reviewing court should assess whether "service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice...." *Id.* 406 N.E.2d at 751, 428 N.Y.S.2d at 894.

A number of courts in the Second Circuit have adopted *Fashion Page*'s more flexible approach to personal service upon corporations. *See, e.g., Breene v. Guardsmark, Inc.*, 680 F.Supp. 88 (S.D.N.Y.1987); *Dai Nippon Printing Co., Ltd. v. Melrose Publishing Co.*, 113 F.R.D. 540 (S.D.N.Y.1986); *Kuhlik v. Atlantic Corporation, Inc.*, 112 F.R.D. 146 (S.D.N.Y.1986); *Leo v. General Elec. Co.*, 111 F.R.D. 407 (E.D.N.Y.1986); *Kroetz v. AFT–Davidson Co.*, 102 F.R.D. 934 (E.D.N.Y.1984).

Applying the above standards, delivering the summons and complaint to Bacon constituted valid service of process upon each of the corporate defendants. Sheinbaum travelled to Suite 1100, 90 West Thirty–Ninth Street, knowing that Martyn Merritt maintained an office there and that Martyn Merritt was an officer, director, and/or major shareholder of Ariel, Klaus, and Dean. When Sheinbaum arrived, the receptionist summoned Bacon, Martyn Merritt's secretary, from the inner office. Upon learning that Sheinbaum was a lawyer bearing papers for Martyn Merritt, Bacon departed the reception area briefly, then returned to tell Sheinbaum she could take the papers and would give them to Martyn Merritt. Under these circumstances, "service [was] made in a manner which, objectively viewed, [was] calculated to give the corporation[s] fair notice...." *Fashion Page*, 406 N.E.2d at 751, 428 N.Y.S.2d at 894.

*Personal Jurisdiction*

Pawlowski, Klaus, and Dean have moved to dismiss the complaint for lack of personal jurisdiction. In a diversity case, the law of the state in which the district court sits determines personal jurisdiction. *See Omni Capital Int'l v. Rudolph Wolff & Co., Ltd.*, 484 U.S. 97, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). Under New York law, personal jurisdiction exists where, among other things, the defendant is "doing business" in New York, N.Y.Civ.Prac.L. & R. § 301 (McKinney's 1972), or the defendant "transacts any business within the state" or "commits a tortious act within the state" and the cause of action arises from that conduct. *Id.* at § 302(a)(1) and (2).

*A. Pawlowski*

■ Pawlowski—a Chicago, Illinois resident—asserts that the court lacks personal jurisdiction over her, stating: "My only possible connection to this lawsuit is that I am the mother of defendant Maryann (sic) Merritt." Pawlowski Aff. ¶ 2. Beyond the fact that Klaus lists Pawlowski as a director, the Plaintiffs offer no other contacts with New York that would support asserting jurisdiction over Pawlowski. Accordingly, the complaint is dismissed as to Pawlowski.

*B. Klaus and Dean*

■ Both Klaus and Dean contend that the court lacks personal jurisdiction over them because they do not do business in New York either directly or through an agent. For support, Klaus has submitted the Singh Affidavit, the Chu letter, and the Maritimo Agreement, and Dean has submitted the Manrai Affidavit.

For the reasons described above, each of these documents is of questionable validity. Moreover, the facts in these documents are contradicted by the documents themselves and by other evidence in the record. For example, the Singh Affidavit contends that Klaus has no directors in the United States,

but the Chu Letter states that Mary Anne Merritt and Pawlowski served as directors for the company. Both the Singh Affidavit and the Chu letter claim that Klaus terminated its agency relationship with Ariel in 1987, but Saffner in a June 1988 letter to the court represented that "Ariel is the agent for [Klaus]." The Manrai Affidavit states that Dean has no officers or directors in the United States, yet Dean's corporate records list Martyn and Mary Anne Merritt as its directors and Mary Anne Merritt as its Secretary.

In light of these considerations, Klaus's and Dean's contention that the court has no jurisdiction over them is dubious. Although the record is somewhat sparse, it could support a finding that Klaus and Dean—through Martyn and Maryanne Merritt, Javelin, and/or Ariel—conducted business in New York sufficient to subject them to the court's jurisdiction. *See Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116 (2d Cir.1967), *cert. denied*, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968).

■ However, an even stronger basis of personal jurisdiction exists. Under New York law, courts will pierce the corporate veil to assert jurisdiction when "the activities of the [owner] show a disregard for the separate corporate existence of the [corporation]." *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft*, 751 F.2d 117, 120 (2d Cir.1984); *see also Public Adm'r of New York County v. Royal Bank*, 19 N.Y.2d 127, 224 N.E.2d 877, 278 N.Y.S.2d 378 (1967); *Taca Int'l Airlines, S.A. v. Rolls Royce of England, Ltd.*, 15 N.Y.2d 97, 204 N.E.2d 329, 256 N.Y.S.2d 129 (1965).

Here, the facts regarding Martyn Merritt's domination of Klaus and Dean support piercing the corporate veil to assert personal jurisdiction over the corporate defendants. In September 1987, the Federal Maritime Commission ("FMC") issued an order, finding:

> This record is replete with evidence that Martyn Merritt directed and controlled the corporate respondents [including Klaus and Dean] in conducting and at-

tempting to conceal unlawful activities....

\* \* \* \* \* \*

We find, further, that Martyn Merritt was the author of and principal beneficiary of the schemes involved in this proceeding. We agree with the Presiding Officer that Merritt was the dominant and controlling figure in the operation of the corporate respondents.

\* \* \* \* \* \*

Merritt not only created, but changed the corporate entities and form of their ownership at will, not only when he caused Klaus stock to be issued ..., but in changing the ownership of Joshua Dean from its "incorporators" to his and his wife's names simultaneously with its creation.

\* \* \* \* \* \*

[T]he corporations lacked individual personalities, separate and apart from Merritt or each other. We believe that the record in this case repeatedly reflects use of the corporate device by Martyn Merritt to violate the Shipping Act, essentially by defrauding the ocean carriers of freight revenues, and to hide the illegal activities carried out through these interwoven corporate shells.

\* \* \* \* \* \*

Whether we pierce the corporate veil based upon the line of cases holding that a corporation which is merely the "alter ego" of its major owner or operator may not be used to shield the individual from liability, or on [another basis], it is clearly appropriate to do so here.

FMC Order at 37–40.

The FMC's findings support asserting jurisdiction over Klaus and Dean, particularly in light of the fact that the standards for piercing the corporate veil are less stringent for asserting jurisdiction than for imposing liability. *See* N.Y.Civ.Prac.L. & R. § 301 Practice Commentaries at 8–9 (McKinney's 1972) (citing *Tokyo Boeki (U.S.A.), Inc. v. SS Navarino*, 324 F.Supp. 361 (S.D.N.Y.1971)).

## Conclusion

For the reasons set forth above, the motions to dismiss are denied as to all the Defendants, except Pawlowski.

It is so ordered.