■ NANCY LEFTON, Appellant, v ALBERT FREEDMAN, Respondent.—In a medical malpractice action to recover damages for personal injuries, the plaintiff appeals from an order of the Supreme Court, Nassau County (Roberto, J.), entered March 6, 1989, which, after a hearing, denied her motion to strike the third affirmative defense asserted by the defendant and granted the defendant's cross motion to dismiss the complaint on the ground, *inter alia,* that the court lacked personal jurisdiction over him.

Ordered that the order is reversed, on the law and the facts, with costs, the plaintiff's motion is granted, the defendant's cross motion is denied, and the third affirmative defense asserted by the defendant is stricken.

The plaintiff commenced this action against the defendant by personal service of a summons, which was apparently accompanied by a verified complaint. By his verified answer, the defendant asserted in his third affirmative defense that he was not properly served with a summons pursuant to CPLR 308. The plaintiff moved to strike the third affirmative defense, and the defendant cross-moved to dismiss the complaint on the ground, *inter alia,* that the court lacked personal jurisdiction over him.

After a hearing to determine whether the plaintiff had been properly served, the Supreme Court denied the plaintiff's motion and granted the defendant's cross motion on the ground that the defendant had not been personally served pursuant to CPLR 308 (1).

The plaintiff argues that the order by the Supreme Court should be reversed because the testimony of her process server was more credible than that of the wife of the defendant. We agree.

The plaintiff's process server, Dennis Cook, testified that he had made several unsuccessful attempts to personally serve the defendant at his medical office and one unsuccessful attempt to serve the defendant at his home. However, on July 15, 1987, at about 8:22 P.M., Cook went to the defendant's home for a second time. As he approached the front door, Cook observed the defendant, who was seated at the table in the dining room, within 10 feet from Cook. Through the dining room window, Cook spoke to the defendant, who identified himself. When the defendant continued to eat, apparently

refusing to come to the door, Cook rang the doorbell. The defendant's wife, Mrs. Freedman, came to the front door. Cook told her who he was, and that he had legal papers for the defendant. At this time the defendant told Cook to "give them [the papers] to my wife" and when Mrs. Freedman opened the door, Cook handed the papers to her. While Mrs. Freedman returned the papers to Cook, saying she could not accept them, Cook nevertheless handed them back to her and then he departed. Mrs. Freedman testified that she had no knowledge concerning any conversation between her husband and Cook on the evening in question. Rather, she claimed that when she went to the door, Cook asked her if the defendant was in. When she told Cook that the defendant was unavailable, she got no response from Cook except the question "Is Dr. Freedman in?" and then Cook shoved "something" through the louvers of the storm door, which had remained locked through this brief conversation. After Cook left, Mrs. Freedman immediately retrieved what had been put in the door, namely, the summons and verified complaint and gave them to the defendant, *who had been sitting in the dining room*. Despite Mrs. Freedman's testimony that a person walking up the front walk could not see into the dining room bay window "because it is off to the side", she conceded that assuming that the bay window was open (and she could not recall whether it was opened on the evening in question), a person sitting in the dining room would be able to have a conversation or hear anything that was said by someone on the walkway or anywhere in the front of the house if "they shout[ed]". At the conclusion of the hearing, the Supreme Court stated that it had found Mrs. Freedman's testimony more credible because Cook's hearing testimony contradicted his form affidavit of service, which indicated that the pleadings had been served on the defendant "by delivering a true copy * * * to [the] defendant * * * personally", and failed to include the additional facts that the papers were physically handed to Mrs. Freedman at the defendant's request.

While the findings of a hearing court concerning the resolution of issues of credibility should be accorded great respect because that court is in the best position to make such an assessment, nevertheless, contrary to our dissenting colleagues' contentions, we find that deference to the hearing court's determination is not warranted under the circumstances. We note that Dennis Cook was a "legally disinterested" witness *(Rowlan v Brooklyn Jewish Hosp.,* 100 AD2d 844, 845), whereas Mrs. Freedman was the wife of the defen-

dant, a party to the litigation. Further, the failure of Cook's form affidavit of service to indicate the precise factual situation surrounding the personal service upon the defendant does not serve as a reasonable basis upon which to discredit his testimony, particularly where Mrs. Freedman admitted that she had no knowledge concerning any conversation between the defendant and Cook. Moreover, the defendant's failure to testify at the hearing, although he was concededly present, permits an inference that his testimony would not have contradicted Cook's testimony and would not have supported his wife's testimony and warrants the drawing of the strongest inference against the defendant that the opposing evidence permits *(see, Noce v Kaufman,* 2 NY2d 347, 353; *Dowling v Hastings,* 211 NY 199; *Turner Press v Gould,* 76 AD2d 906; *Scola v Morgan,* 66 AD2d 228; PJI 1:75). We therefore credit the process server's testimony and accept his account of the event *(see, Kardanis v Velis,* 90 AD2d 727).

"[U]nder CPLR 308 (subd 1) delivery of a summons may be accomplished by leaving it in the 'general vicinity' of a person to be served who 'resists' service *(McDonald v Ames Supply Co.,* 22 NY2d 111, 115). Thus, under that provision, if the person to be served interposes a door between himself and the process server, the latter may leave the summons outside the door provided the person to be served is made aware that he is doing so" *(Bossuk v Steinberg,* 58 NY2d 916, 918). In this case, we find that the process server's delivery of the pleadings to Mrs. Freedman, the wife of the defendant, at the defendant's request, satisfied the requirements of service under CPLR 308 (1) *(see, Bradley v Musacchio,* 94 AD2d 783). This case is distinguishable from *Macchia v Russo* (67 NY2d 592), wherein the process server delivered the papers to the defendant's son outside of the defendant's home, without in any way attempting to inform the defendant that the pleadings were being left with his son, and the defendant had not authorized the process server to do so.

Accordingly, the plaintiff's motion is granted, the defendant's cross motion is denied, and the third affirmative defense in the defendant's verified answer is stricken. Lawrence, Kooper and Rubin, JJ., concur.

Bracken, J. P., dissents and votes to affirm the order, with the following memorandum, in which Kunzeman, J., concurs. The Court of Appeals has twice stated that " '[w]e see no reason to extend the clear and unambiguous meaning of CPLR 308 (subd 1)' " *(Macchia v Russo,* 67 NY2d 592, 594; *Espy v Giorlando,* 56 NY2d 640, 642). The "clear and unam-

biguous" terms of CPLR 308 (1) state that, in order to acquire personal jurisdiction and commence an action, the plaintiff's agent must deliver the summons directly to the defendant. My colleagues in the majority must acknowledge that no such delivery occurred in this case. In holding that valid service of process was nonetheless accomplished, it seems to me that the majority has done precisely that which the Court of Appeals has previously declared should not be done, i.e., it has extended the scope of CPLR 308 (1) beyond the literal meaning of its terms. Moreover, in order to accomplish this result, the majority has gone so far as to make new findings of fact directly inconsistent with those made by the hearing court. For these reasons, I dissent.

Analytic clarity will best be served by noting, first, the important respects in which the findings of fact made by my colleagues differ from those made by the hearing court. The majority finds that the plaintiff's process server, who had arrived at the threshold of the defendant's home, was able to communicate with the defendant through an open window located next to the front door. The majority also finds that after Mary Freedman, the defendant's wife, had answered the doorbell, and after the process server had identified himself and the nature of his visit, the defendant (apparently communicating with the process server through the open window) said, "give them [the papers] to my wife". The majority further finds that the process server handed the summons and complaint to Mary Freedman, that Mrs. Freedman, reluctant to accept them, handed them back, and that the process server, having handed them to Mrs. Freedman yet again, departed.

The foregoing findings of fact may be supported by the hearing testimony of the plaintiff's process server. However, they are largely inconsistent with the findings of fact made by the hearing court, which based its conclusions on the testimony of Mrs. Freedman, whom the hearing court, in its decision, found to be "more credible". Specifically, Mrs. Freedman denied that the summons and complaint were handed to her; rather, she testified that these documents were shoved through the louvers of a screen door. More importantly, Mrs. Freedman's testimony explicitly contradicted the process server's testimony that it was possible for a person standing at the front door of her home to see through a nearby window. Her testimony thus implicitly contradicts the process server's claim that he was able to ascertain the presence of, and actually communicate with, the defendant through this win-

dow. The hearing court justifiably concluded, based on Mrs. Freedman's testimony, that the defendant had *not* instructed the process server to leave the summons and complaint with Mrs. Freedman.

In setting aside the findings of fact made by the hearing court, my colleagues, I submit, have infringed upon one of the most time-honored rules of appellate review, i.e., that the "truthfulness * * * of witnesses can be passed upon with greater safety by those who see and hear them than by those who simply read the printed record narrative" *(People v Gaimari,* 176 NY 84, 94). I recognize, of course, that the scope of review possessed by this court extends to questions of fact as well as to questions of law *(see,* CPLR 5712 [c] [2]; 5501 [c]; *Bonnette v Molloy,* 209 NY 167; *Maritime Fish Prods. v World Wide Fish Prods.,* 100 AD2d 81, 90) and that this court has the power to take a different view of the weight of the evidence, and to reverse a judgment or order on the facts, even where the trial court's findings are not clearly erroneous *(see generally, York Mtge. Corp. v Clotar Constr. Corp.,* 254 NY 128; *Matter of McMillan,* 218 NY 64). However, exercise of this power has always been tempered by obedience to the principle that, in assessing the credibility of witnesses whose testimony is in conflict, Appellate Judges should defer to the opinion expressed by the trial court. "Evaluations and determinations reached *de novo* at the appellate level, amounting, in effect, to complete redeterminations of basic issues, are usually best avoided" *(Conklin v State of New York,* 22 AD2d 481, 483; *see also, Porter v Lane Constr. Co.,* 212 App Div 528, *affd* 244 NY 523; 11 Carmody-Wait 2d, NY Prac § 72:155; 1 Newman, New York Appellate Practice § 4.08).

In choosing to credit the plaintiff's process server rather than Mrs. Freedman, the majority does not—and cannot—refer to any aspect of her testimony which is inherently improbable or incredible. The majority merely asserts that her testimony is suspect because she is the spouse of the defendant. However, I do not see why Mrs. Freedman's marital relationship to the defendant should serve to undermine her credibility in any significant way. It might just as easily be asserted that the process server's business relationship with the plaintiff undermines his credibility. I would therefore defer to the hearing court's decision to credit the testimony of Mrs. Freedman. As the majority seems to recognize, the facts established by her testimony show clearly that the requirements of CPLR 308 (1) were not met.

My disagreement with the majority goes further than this

factual dispute. Even if I were to concur with all of the findings of fact now being made by the majority, I would nevertheless conclude that valid service of process was not accomplished in this case.

In *Bradley v Musacchio* (94 AD2d 783) this court found that valid service had been made pursuant to CPLR 308 (1) where the process server delivered the summons to a third party in the defendant's presence. The defendant had, in fact, told the process server that the third party in question would accept the summons and the summons was subsequently redelivered to the defendant. I concede that, given the majority's findings of fact, this case would seem to be governed by the holding of *Bradley v Musacchio* and similar cases.

However, the decision by the Court of Appeals in the case of *Macchia v Russo* (67 NY2d 592, *supra*), has cast doubt on the validity of the holding of *Bradley v Musacchio* and on the entire line of cases in which the so-called "delivery-redelivery" exception to CPLR 308 (1) has been recognized *(see, e.g., Daniels v Eastman,* 87 AD2d 882; *Conroy v International Term. Operating Co.,* 87 AD2d 858; *see also, Jones v Nossoughi,* 147 AD2d 447). These cases hold that valid service may be made on a defendant if the summons is delivered to a third party in the defendant's "presence", and the delivery is followed by redelivery to the defendant. While the Court of Appeals originally seemed to approve of the "delivery-redelivery" exception *(see, McDonald v Ames Supply Co.,* 22 NY2d 111, 115), at least where the process server was shown to have acted diligently, in *Macchia v Russo (supra),* the court noted that *McDonald* had been decided before the enactment of major amendments to CPLR 308, and expressed disapproval of the "delivery-redelivery" exception. In his 1986 and 1987 Practice Commentaries to CPLR 308 (1), Judge McLaughlin stated that cases such as *Daniels v Eastman (supra)* and *Bradley v Musachio (supra)* were, in light of *Macchia v Russo (supra)* "dubious * * * at best" (McLaughlin, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C308:1, 1990 Supp Pamph, at 219).

I agree with Judge McLaughlin's assessment of the sweep of *Macchia v Russo (supra).* The Court of Appeals could scarcely have been more explicit in holding that the failure to comply with the literal terms of CPLR 308 (1) should be excused, if at all, only where a process server has acted reasonably in the face of attempts to evade service through actual misrepresentations *(Macchia v Russo, supra,* at 594-595). There was no proof in this case from which it could be inferred that in

telling the process server that his wife would accept the summons, the defendant was attempting to evade service.

In accordance with the holding of *Macchia v Russo (supra)*, I believe that enforcement of the statutes regarding service of process should be relaxed, if at all, only in those instances where the failure to do so would either reward a person who consciously evaded service, or punish a plaintiff who (through his agent) acted diligently. I would also suggest that, as a matter of law, a process server cannot claim to have been diligent where he is shown to have failed to comply with an alternative method of service which was clearly open to him. In the present case, it is clear beyond any doubt that, having failed in his attempt to make personal service pursuant to CPLR 308 (1), the plaintiff's process server could have made valid service by simply delivering a copy of the summons to the defendant's wife and mailing a copy to the defendant's home pursuant to CPLR 308 (2). There is not the slightest indication in this record as to why this simple step was not taken.

Even prior to the decision in *Macchia v Russo (supra)*, it was widely thought that the need for any "delivery-redelivery" exception had been eliminated by the adoption of CPLR 308 (2). The following passage from Professor Siegel's treatise on New York Practice is illustrative: "Members of the defendant's family who answer the door when the process server knocks are often cast in the redeliverer's role. Earlier case law held that where the defendant from a few feet away saw the process server (and vice-versa) and heard him announce that he had a summons, delivery to the door-answerer with subsequent redelivery by him to the defendant was satisfactory, but that if in the same situation server and defendant did not see each other it was not. *These cases have lost importance in view of the adoption of CPLR 308 (2), in which the delivery of the summons to the door-answerer (whatever he thereafter does with it) need only be followed by a second step of mailing. CPLR 308 (1) becomes academic in such a case*" (Siegel, NY Prac, § 66, at 69 [emphasis added]).

The Court of Appeals decision in *Macchia v Russo (supra)* confirmed that the enactment of CPLR 308 (2) largely obviated the need for recognition of the "delivery-redelivery" exception. As noted by Professor Siegel in a supplement to his treatise: "In many of these instances of service on someone other than the defendant, made on the assumption that someone will then get the summons into the defendant's hands, the precaution of just mailing another copy of the summons to the

defendant's last known residence will take the case out of paragraph 1, where it is in jeopardy, and put it into a safer niche in paragraph 2. The additional step of mailing, in other words, takes the importance out of whether the deliveree is the defendant or just some person found at his home or office. Without the mailing, paragraph 1 is relied on, and paragraph 1 is just not safe to rely on in these 'redelivery' cases, even where the deliveree is (e.g.) the defendant's son and even though the son promptly gives the papers to his father, as occurred in Macchia v. Russo, 67 N.Y.2d 592, 505 N.Y.S.2d 591, 496 N.E.2d 680 (1986)" (Siegel, NY Prac, § 66, at 26 [1987 Pocket Part]).

I believe that the Court of Appeals' decision in *Macchia v Russo (supra)* stands for the simple proposition that CPLR 308 (1) should be strictly applied, and that the courts should recognize exceptions to it, if at all, only where the plaintiff, through his agents, is proved to have acted diligently. I do not believe that a plaintiff's process server can be considered "diligent" where it is beyond question that he could have accomplished valid service by simply placing a copy of the summons and complaint in a properly addressed envelope and posting it at the nearest mailbox *(see,* CPLR 308 [2]). In short, the "delivery-redelivery" exception to CPLR 308 (1) should not be invoked in order to uphold personal jurisdiction where personal jurisdiction could easily have been obtained pursuant to CPLR 308 (2) *(see, Macchia v Russo, supra; Selby v Jewish Mem. Hosp.,* 130 AD2d 651, 652; *see also, Manocchio v Narain,* 144 AD2d 1022, 1023; *cf., Jones v Nossoughi, supra).*

For these reasons, I dissent and vote to affirm.