MELKAZ INTERNATIONAL
INC., Plaintiff,

v.

FLAVOR INNOVATION INC. and
Charlene Brach, Defendants.

No. 95 CV 3358(JRB).

United States District Court,
E.D. New York.

April 29, 1996.

Law Office of Curt–Rogg–Meltzer, New York City, for plaintiff.*

Richard J.J. Scarola, Scarola & Reavis, New York City, for defendants.

### MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

Defendants Flavor Innovation Inc. ("Flavor Innovation") and Charlene Brach (collectively "Defendants") move to dismiss Plaintiff Melkaz International Inc.'s ("Melkaz") complaint in this diversity action under Federal Rule 12(b)(2), (4) and (5) for improper service of process and lack of personal jurisdiction. In the alternative, Defendants move to quash service. For the reasons stated below, the motions are granted in part and denied in part.

### Background

The following undisputed facts appear in the parties' papers.[1] Melkaz instituted the

---

* The motion at issue was briefed and argued by plaintiff's former counsel, Roman V. Popik, Esq.

1. Although, upon the substitution of counsel, Plaintiff submitted additional documents, the Court now relies only upon the original filings.

above-captioned action by complaint dated August 11, 1995. It is a New York corporation which engages in the international trade of certain food products and its principle place of business is at 43–43 Kissena Boulevard in Flushing, New York. Flavor Innovation is a New Jersey corporation which manufactures certain food products and its principle place of business is 220 Saint Nicholas Avenue in South Plainfied, New Jersey. For a period of time Melkaz distributed instant coffee product manufactured by Flavor Innovation.

Service of the summons and complaint was attempted on August 17, 1995. The parties heatedly contested whether service of either defendant was valid.

Much of the business conducted between the parties was conducted by telephone and mail: Melkaz seeking out new buyers of Flavor Innovation's product and arranging for its production, distribution and sale. When Melkaz located a potential buyer, it contacted Flavor Innovation with the specifications required and Flavor Innovation manufactured the product. The heart of this action is a contract dispute which need not be addressed for the purposes of the instant motion.

## Discussion

Defendants move to dismiss this action or to quash service based on the claim that Melkaz did not effect proper service and for lack of personal jurisdiction based on the claim that they are not subject to suit in New York.

### I. Service

This Court referred the case to Magistrate Judge Levy for a hearing on the validity of service as to both the corporate and individual defendants. After conducting the January 16, 1996 hearing, Judge Levy issued a well-reasoned and thorough report on February 14, 1996 recommending that this Court find service valid on the corporate defendant, Flavor Innovation, based on the principle of "redelivery", and find service invalid on the individual defendant, Charlene Brach, based on the process server's identification at the hearing of a "clerical" worker as the recipient of process meant for the president of the company. Under the terms of the report and recommendation, the parties were required to file any objections within ten days of receipt of the report. Neither party filed such an objection.

For the reasons set forth in the report and recommendation issued by Magistrate Judge Levy, the findings of said report and recommendation hereby are adopted, and Defendants' motion to dismiss is hereby granted as to the validity of service of Charlene Brach and denied as to the validity of service of Flavor Innovation. Charlene Brach is therefore dismissed as a defendant in this action.

### II. Personal Jurisdiction

Next, Defendants argue that the Court has no personal jurisdiction over Flavor Innovation because it is a New Jersey corporation with insufficient New York contacts to warrant jurisdiction in New York. The Court finds no basis for Flavor Innovation's contention.

Although Melkaz ultimately bears the burden of establishing that this Court has jurisdiction over Defendants, in defending the present motion they need only make a *prima facie* showing of jurisdiction. *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990); *Welinsky v. Resort of the World D.N.V.,* 839 F.2d 928, 930 (2d Cir.1988); *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361 (2d Cir.1986); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). Construing, as it must, all reasonable allegations in Plaintiff's favor, *A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79–80 (2d Cir.1993), the Court finds that Melkaz has made the requisite showing.

Personal jurisdiction in a diversity action turns upon the law of the forum state. *Savin v. Ranier,* 898 F.2d 304, 306 (2d Cir. 1990); *Hoffritz for Cutlery,* 763 F.2d at 57; *CutCo,* 806 F.2d at 365. Here, jurisdiction is governed by section 302 of the New York Civil Practice Law and Rules ("CPLR"), New York's long-arm statute. Section 302(a)(1) of the long-arm statute grants the

court jurisdiction over any nondomiciliary "who in person or through an agent [ ] transacts any business within the state or contracts anywhere to supply goods or services in the state." CPLR 302(a)(1).

■ To establish jurisdiction under the "transacting business" prong of this section, Melkaz must demonstrate both that Flavor Innovation "transacted business" within New York and that the subject claim arose from Flavor Innovation's in-state business activity. *CutCo*, 806 F.2d at 365.

As to the latter requirement that the subject claim arose from Flavor Innovation's in-state activity, there can be no doubt. The underlying case concerns the terms of agreements between the parties and the payment of commissions to Melkaz.

For the former requirement, courts generally look to the "totality of the circumstances" surrounding a nondomiciliary's in-state activity to determine whether a party has "transacted business" within the meaning of CPLR 302(a)(1). *Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Investors*, 510 F.2d 870, 873, 874 (2d Cir.1975); *First City Fed. Sav. Bank v. Dennis*, 680 F.Supp. 579, 583 (S.D.N.Y.1988).

■ Melkaz alleges that Flavor Innovation used New York as a shipping port, a New York laboratory tested Flavor Innovation's product's quality, Flavor Innovation entered a number of agreements with Melkaz as well as sent and received facsimile transmissions and telephone calls with Melkaz in order to conduct their business before the relationship deteriorated. Additionally, Melkaz notes that Flavor Innovation's product is available at stores in New York.

The October 21, 1993 Contract specifies that New York law governs the agreement (Popik Aff. Ex. A at 2) and indicates execution in New York. (*Id.;* Popik Aff. at 2) Additionally, Flavor Innovation allegedly sold products in New York, sold Melkaz $200,000 worth of merchandise, received orders for over 67,000 cans of instant coffee and conducted business with a New York company by mail, phone and facsimile. (Popik Aff. at 4)

Flavor Innovation then nurtured and continued to reap the benefits of a lasting financial relationship with a resident plaintiff through a series of communications relating to the sale of products that began in October 1993 and spanned at least two years, with daily communication at times. The frequency and duration of these communications remain proper considerations when deciding whether to exercise *in personam* jurisdiction. *See Catalyst Energy Dev. Corp. v. Iron Mountain Mines, Inc.*, 630 F.Supp. 1314, 1316–17 (S.D.N.Y.1986); *China Union Lines, Ltd. v. American Marine Underwriters, Inc.*, 454 F.Supp. 198, 202 (S.D.N.Y.1978).

■ The Court remains cognizant of those decisions that have held "that merely sending letters and making telephone calls to New York are not by themselves sufficient to impose jurisdiction under § 302(a)(1)." *Pell v. Clarke*, No. 93–Civ–332, 1994 WL 74075 (S.D.N.Y. Mar. 9, 1994) (citing cases). True, "not every telephone call made into the state subjects the caller to long-arm jurisdiction." *Wilhelmshaven Acquisition Corp. v. Asher*, 810 F.Supp. 108, 112 (S.D.N.Y.1993). But, where a defendant "projects" itself by means of telephone and mail contacts "into New York in such a manner that [it] 'purposefully avail[s] [itself]' " of the protections and benefits of New York law, telephonic and written communications can provide a basis for jurisdiction under § 302(a)(1). *Id.* (quoting *Parke–Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 17–19, 308 N.Y.S.2d 337, 340–41, 256 N.E.2d 506, 508–09 (1970)). *See also Wilhelmshaven Acquisition Corp.*, 810 F.Supp. at 112 (citing cases). This case presents an aggregate of extensive, purposeful forum activity which demonstrates that Flavor Innovation "projected" itself into New York. *See, e.g., Catalyst Energy Dev. Corp.*, 630 F.Supp. at 1317; *China Union Lines*, 454 F.Supp. at 202; *Parke–Bernet Galleries*, 26 N.Y.2d at 18, 308 N.Y.S.2d at 340–41, 256 N.E.2d at 508–09.

The New York Court of Appeals has held that "one need not be physically present in order to be subject to the jurisdiction of our courts under CPLR 302." *Parke–Bernet Galleries*, 26 N.Y.2d at 17, 308 N.Y.S.2d at 340, 256 N.E.2d at 508. This is a case where

defendant has engaged "in extensive purposeful activity here" possibly "without ever actually setting foot in the State." *Id. Accord Plaza Realty Investors v. Bailey,* 484 F.Supp. 335, 345 (1979). (Naturally, if the October 1993 contract was in fact executed in New York, Defendant has clearly "set foot" in New York.)

▪ When reviewing the sum of a nonresident defendant's activities, the court also must ascertain whether constitutional due process requirements have been met. Due process ensures that an out-of-state defendant has had certain minimal contact with the forum, such that he or she reasonably can "anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). CPLR 302 and due process concerns are satisfied where an out-of-state defendant's "activities constitute purposeful efforts to invoke the benefits and protection of New York law." *First City Fed. Sav. Bank,* 680 F.Supp. at 584 (citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). At the very least, the contracting parties' choice of New York law indicates such efforts, and the allegations of more extensive business transactions and the shipping of goods into New York clearly satisfies due process requirements as well.

The sum of Flavor Innovation's New York contacts convinces the Court that for purposes of the present motion Melkaz has handily made a *prima facie* showing that Defendant reasonably could anticipate "being haled into court" in this forum, *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. at 567, and that Flavor Innovation engaged in continuous, purposeful activity in New York sufficient to confer jurisdiction under CPLR 302(a)(1) as well.

Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction is denied.

### Conclusion

For the reasons set forth in the report and recommendation issued by Magistrate Judge Levy, the findings of said report and recom-

mendation hereby are adopted, and Defendants' motion to dismiss is hereby GRANTED as to the validity of service of Charlene Brach and DENIED as to the validity of service of Flavor Innovation.

For the reasons set forth above, Defendants' motion to dismiss is hereby DENIED as to personal jurisdiction.

**SO ORDERED.**

### *REPORT AND RECOMMENDATION*

LEVY, United States Magistrate Judge:

By order dated December 19, 1995, the Honorable John R. Bartels, United States District Judge, referred this case to the undersigned to conduct a hearing "for the purpose of resolving the dispute surrounding the service of the summons and complaint." A hearing was conducted before this court on January 16, 1996. For the reasons set forth below, the undersigned respectfully recommends that defendant's motion to quash the service of the summons and complaint be granted in part and denied in part.

The following delineates the court's findings of fact and conclusions of law.

### BACKGROUND AND FACTS

Plaintiff filed the above-captioned matter on August 16, 1995. On August 23, 1995, plaintiff filed the affidavit of Joseph Farrell, a licensed process server, stating that he had served both defendants Flavor Innovation Inc. ("Flavor Innovation") and Charlene Brach by personally delivering the summons and verified complaint to Ms. Brach, the president of Flavor Innovation, at the corporation's headquarters at 220 St. Nicholas Avenue in South Plainfield, New Jersey on August 17, 1995 at 8:30 a.m. The affidavit of service described Ms. Brach as a white female with blonde hair, approximately fifty years old, five feet nine inches tall and weighing approximately 155 pounds.

Subsequently, defendants moved to quash plaintiff's service of the summons and complaint, contending that plaintiff had filed a false affidavit of service. In support of their motion, defendants submitted the affidavits of two Flavor Innovation employees, Nancy

A. Copeland and Isabelle G. Siano. Both affiants stated that Ms. Brach was not present at the company headquarters on August 17, 1995 at 8:30 a.m. Both also stated that a man visited Flavor Innovation's offices on August 17, 1995 at approximately 8:30 a.m. seeking to deliver papers to Ms. Brach, that Ms. Copeland told him Ms. Brach was not available, and that he left two envelopes on the table in the waiting area at the entrance to the offices. Both affiants swore that they are not officers or directors of Flavor Innovation and are not authorized to accept service of process on behalf of the company.

In response, plaintiff asserted that the affidavits submitted by defendants were false and insisted that in fact plaintiff had personally served copies of the summons and verified complaint on Ms. Brach. It submitted a second affidavit by Joseph Farrell, again stating that he had personally delivered copies of the summons and verified complaint to Ms. Brach at Flavor Innovation's offices in South Plainfield, New Jersey on August 17, 1995 at 8:30 a.m.

In order to resolve this factual dispute, Judge Bartels referred this matter to me to conduct a hearing. At the hearing, which took place on January 16, 1996, four witnesses testified: Joseph N. Farrell, Nancy A. Copeland, Isabelle G. Siano and Mark Kazais, the president of plaintiff Melkaz Int'l Inc.

█ Mr. Farrell testified that on August 17, 1995 at approximately 8:15 a.m., he arrived at Flavor Innovation's offices in South Plainfield, New Jersey and was greeted by a woman whom he could not identify. Hearing Transcript ("Tr.") at 10. Mr. Farrell stated that he told the woman he was looking for Charlene Brach and the woman responded that Ms. Brach was in a meeting and asked him to have a seat. *Id.* He then testified that a second woman came out to the waiting area and said to him "you have something for me." According to Mr. Farrell, he told the

second woman he had court papers for Flavor Innovation and Charlene Brach and she replied "I am not signing anything." *Id.* Mr. Farrell claimed he told the woman that she was not required to sign anything, after which she left the room and closed the door. Tr. at 10–11. He then stated that he left the papers on the coffee table in the waiting area and exited the offices. Tr. at 11, 14. When asked on cross-examination if he could identify the second woman, Mr. Farrell pointed to a woman who was sitting in the courtroom and who later identified herself as Nancy Copeland. Tr. at 12.[2]

Isabelle Siano testified that she holds a "clerical" position at Flavor Innovation and was present when Mr. Farrell visited the offices on August 17, 1995. Tr. at 23. She stated:

> I answered the door and he told me he had papers to serve Charlene Brach. And I said she's not here, just a moment. I closed the door, I went to Nancy [Copeland who] was interviewing a gentleman [and who] worked closely with Charlene [Brach]. I said Nancy, what should I do. She said I'll take care of it. She went to the door, spoke to the gentleman, and I was standing behind her and the only thing she said to the gentleman was Charlene Brach is not here and I cannot accept the papers. And he stated that he would leave them on the table and he left.

Tr. at 23. Ms. Siano said that Mr. Farrell did not ask any questions about her identity or position or Ms. Copeland's identity or position. Tr. at 23–24. She also said that Ms. Brach had been in the office earlier that morning, but had left the premises before Mr. Farrell arrived. Tr. at 24.[3]

Nancy Copeland testified that she is the office administrator and director of sales for Flavor Innovation, but is not an officer or director of the company. Tr. at 28–29. She said that she was present at Flavor Innovation's facility on August 17, 1995 and was

**2.** The court takes judicial notice of the fact that Ms. Copeland is a white female with blonde hair, approximately fifty years old, five feet nine inches tall and weighing approximately 155 pounds.

**3.** Mr. Kazais testified that he had telephoned Flavor Innovation's offices and spoken with Ms. Brach on August 17, 1995 at 7:11 a.m. Tr. at 18. Defendants' counsel stipulated that Ms. Brach was in the office on that date at that time. Tr. at 19.

conducting a lengthy interview with a man who had applied for a position as a specialized mechanic when Ms. Siano knocked on the door and told her that someone wanted "to see Charlene." Tr. at 30. According to Ms. Copeland, she "went to the door and ... said Charlene Brach is not here." Tr. at 31.[4] She said the man replied "well, I'm leaving these anyway" and then "[threw] two papers down and walk[ed] out." *Id.* Ms. Copeland denied having asked Mr. Farrell "what do you have for me?" Tr. at 32. She also stated that Mr. Farrell did not explain what was in the envelopes he placed on the table, did not attempt to give her the papers, did not ask her any questions and did not instruct her as to what to do with the papers. Tr. at 32–33.

On cross-examination, Ms. Copeland described her position as "clerical" and explained that she is involved in export sales "strictly from the paperwork [sic]." Tr. at 35.[5] She also stated that Ms. Siano later delivered the summons and complaint to Ms. Brach and that she saw the court papers later the same day "when Charlene [Brach] came in and was reviewing them." Tr. at 39. Counsel for defendants stipulated that Ms. Brach did in fact receive the papers. Tr. at 39, 44.

## DISCUSSION

Rule 4 of the Federal Rules of Civil Procedure states that a plaintiff must serve an individual defendant:

by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed.R.Civ.P. 4(e)(2). Thus, under the federal rules, a plaintiff may not serve an individual defendant by leaving a copy of the summons and complaint with a person of suitable age and discretion at the person's place of business.

Moreover, a plaintiff must effect service on a corporation:

by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

Fed.R.Civ.P. 4(h)(1). Thus, under the federal rules, a plaintiff may not serve a corporation by leaving a copy of the summons and complaint with a person of suitable age and discretion at the corporation's headquarters.

However, service upon either an individual or a corporation may be effected "pursuant to the law of the state in which the district court is located, or in which service is effected." Fed.R.Civ.P. 4(e)(1). Thus, New York law applies here. New York CPLR § 308 states that personal service upon a natural person "shall be made":

1. by delivering the summons ... to the person to be served; or 2. by delivering the summons ... to a person of suitable age and discretion at the actual place of business, dwelling or usual place of abode to the person to be served *and* by either mailing the summons to the person to be served at his or her actual place of business ...; or 3. by delivering the summons ... to the agent for service of the person to be served as designated under rule 318 ...; or 4. where service under [the preceding paragraphs] cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode

---

**4.** Contrary to the claims of defendants' counsel, Ms. Copeland did not testify "that she specifically advised the process server that she was not authorized to accept the papers." *See* Letter from Richard J.J. Scarola to the undersigned, dated January 17, 1996.

**5.** Ms. Copeland also described herself as Charlene Brach's "assistant." Tr. at 31. Mr. Kazais described Ms. Copeland as the person at Flavor Innovation who "does all the paperwork, accepts papers, ... sends papers, faxes, letters, and ... makes decisions sometimes about selling products...." Tr. at 17.

... of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business.... (emphasis supplied)

With regard to corporations, CPLR § 311 states that "[p]ersonal service upon a corporation ... shall be made by delivering the summons ... to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service."

■ However, New York courts have embraced a more flexible approach to personal service upon corporations, known as the principle of "redelivery." The New York Court of Appeals first recognized this theory in *McDonald v. Ames Supply Co.,* 22 N.Y.2d 111, 291 N.Y.S.2d 328, 238 N.E.2d 726 (1968). Although service was found to be improper in that case, the court determined that, as a general rule, service on a corporation will be upheld if: (a) the process server acts with due diligence in attempting to fulfill the statutory requirements of personal delivery, *i.e.,* he or she ascertains that the recipient is a company employee; (b) the process server nevertheless serves a person not authorized to accept service; and (c) the recipient then redelivers the papers to one who is authorized to accept service. *Id.,* 22 N.Y.2d at 115, 291 N.Y.S.2d at 331, 238 N.E.2d at 726. *See also Leo v. General Electric Co.,* 111 F.R.D. 407, 412–13 (E.D.N.Y.1986). The redelivery must be "so close both in time and space that it can be classified as part of the same act." *McDonald,* 22 N.Y.2d at 115, 291 N.Y.S.2d at 332, 238 N.E.2d at 728 (*quoting Green v. Morningside Heights Housing Corp.,* 13 Misc.2d 124, 125, 177 N.Y.S.2d 760 (Sup.Ct.N.Y. County), *aff'd,* 7 A.D.2d 708, 180 N.Y.S.2d 104 (1st Dep't 1958)).

Following *McDonald,* the New York Court of Appeals has found service of process to be valid where "the process server has gone to [the corporation's] offices, made proper inquiry of the defendant's own employees, and delivered the summons according to their own directions." *Fashion Page, Ltd. v. Zurich Ins. Co.,* 50 N.Y.2d 265, 273, 428 N.Y.S.2d 890, 894, 406 N.E.2d 747, 751 (1980). In determining whether service under these circumstances is acceptable, the reviewing court must assess whether "service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice...." *Id.,* 50 N.Y.2d at 272, 428 N.Y.S.2d at 894, 406 N.E.2d at 751. *See also Nationwide Mutual Ins. Co. v. Kaufman,* 896 F.Supp. 104, 108–09 (E.D.N.Y.1995) ("The law does not require that the process server make a factually accurate determination of the status of the person who is served, but rather that service be 'made in a manner which, viewed objectively, was calculated to give the corporate defendants fair notice of the legal proceedings against them.'") (*quoting Carlin v. Crum & Forster Ins. Co.,* 170 A.D.2d 251, 565 N.Y.S.2d 519, 520 (1st Dep't 1991)); *De Vore v. Osborne,* 78 A.D.2d 915, 432 N.Y.S.2d 919, 921 (3d Dep't 1980) (the court must determine whether "objectively viewed, in light of the circumstances, the service made was calculated to give the corporation fair notice and, in fact, resulted in immediate redelivery of the summonses to a proper person").

The concept of "redelivery" has been fully embraced and broadly interpreted by courts within the Second Circuit. *See, e.g., Kaufman,* 896 F.Supp. at 108–09 (service on corporation's comptroller upheld where process server told receptionist he had legal papers to serve and comptroller, who was not authorized to accept service, was summoned to receive the papers); *M. Prusman, Ltd. v. Ariel Maritime Group, Inc.,* 719 F.Supp. 214 (S.D.N.Y.1989) ("A number of courts in the Second Circuit have adopted *Fashion Page*'s more flexible approach to personal service upon corporations"); *Leo,* 111 F.R.D. at 413 ("'If a corporation is subject to jurisdiction, and if the summons is eventually delivered to a servable official, the better approach is to seek to sustain jurisdiction rather than become bogged down in highly cerebral distinctions between types of agents'") (citation omitted); *Ross v. Colorado Outward Bound School, Inc.,* 603 F.Supp. 306 (W.D.N.Y.1985) (service on unauthorized school administrator upheld because administrator never refused service, which was calculated to give fair

notice and resulted in actual redelivery to the appropriate person).

In addition, several courts have interpreted the concept of redelivery to support the validity of service upon a corporation's receptionist or secretary. *See, e.g., Seward & Kissel v. Smith Wilson Co.*, 814 F.Supp. 370, 375 (S.D.N.Y.1993) (although secretary was not authorized to accept service of process, service was effective where secretary accepted papers and then passed them on to her supervisor); *Breene v. Guardsmark, Inc.*, 680 F.Supp. 88, 92–93 (S.D.N.Y.1987) (service on receptionist was valid where process server overheard vice-president telling receptionist to sign for the documents, receptionist did so and then delivered the papers to authorized individual); *Kuhlik v. Atlantic Corp., Inc.*, 112 F.R.D. 146, 147 (S.D.N.Y. 1986) (service upheld where process server left papers with receptionist who said that the requested person was unavailable but that she "could accept the summons for them"); *Leo*, 111 F.R.D. at 414 (service on secretary was valid because secretary was obviously a corporate employee and, upon receiving papers, immediately redelivered them to managing agent authorized to receive process); *Knits 'N' Tweeds, Inc. v. Jones New York*, 442 F.Supp. 1129, 1130 (E.D.N.Y.1978) (service on corporation's receptionist upheld because redelivery provid-

ed actual and prompt notice of the pending litigation); *Conroy v. International Terminal Operating Co.*, 87 A.D.2d 858, 859, 449 N.Y.S.2d 294, 294 (2d Dep't 1982) (service upheld where receptionist redelivered to authorized person one minute later); *Shedlin v. State Tax Comm'n*, 62 A.D.2d 806, 809, 406 N.Y.S.2d 596, 598 (3d Dep't 1978) (service upheld where receptionist disavowed authority to accept process but retained service papers and redelivered them to authorized person the following day).

 Applying these principles to the instant case, I respectfully recommend that service be quashed as to Charlene Brach, but that the service on Flavor Innovation be deemed valid under the principle of redelivery. Based on the testimony adduced at the hearing, it is beyond doubt that Mr. Farrell did *not* personally deliver the summons and verified complaint to Charlene Brach. Nonetheless, the service Mr. Farrell made was calculated to give Flavor Innovation fair notice of the pending litigation and, in fact, resulted in immediate redelivery of the summons and verified complaint to Charlene Brach. Mr. Farrell went to Flavor Innovation's headquarters, identified himself to Ms. Siano and stated his purpose. Ms. Siano directed him to Ms. Copeland.[6] Although neither Ms. Siano nor Ms. Copeland is authorized by the company to accept service, and

---

**6.** Mr. Farrell stated that he believed he had served Charlene Brach personally. Although it is clear that Mr. Farrell did not in fact meet Ms. Brach, it would not have been unreasonable under the circumstances for Mr. Farrell to believe that Ms. Copeland was authorized to accept service. The hearing testimony established that when Mr. Farrell arrived at Flavor Innovation's offices and told Ms. Siano that he was there to serve legal papers on Charlene Brach, Ms. Siano said either that Ms. Brach was in a meeting or was not there, but she referred him to a second employee—Ms. Copeland. By her own testimony, Ms. Copeland told Mr. Farrell that Ms. Brach was not there, but she did not tell him that she lacked the authority to accept service. Thus, Mr. Farrell could reasonably have relied on Ms. Siano's implicit designation of Ms. Copeland as the appropriate person to serve. *See Fashion Page*, 50 N.Y.2d at 272, 428 N.Y.S.2d at 893, 406 N.E.2d at 751 (a process server cannot be expected to know the corporation's internal practices and is entitled to rely on corporate employees to identify the proper person to accept service); *Von Thaden v. S.J. Groves & Sons Co.*,

97 A.D.2d 677, 469 N.Y.S.2d 172, 173 (3d Dep't 1983) (service upheld where receptionist told process server that there was no one present who was authorized to accept service, but directed process server to an employee who received the papers without indicating that he lacked authority to accept service and promptly redelivered summons and complaint to the appropriate corporate authority).

Moreover, under CPLR § 308(1), delivery of a summons and complaint may be accomplished by leaving it in the "general vicinity" of a person who "resists" service. *McDonald*, 22 N.Y.2d at 115, 291 N.Y.S.2d at 331, 238 N.E.2d at 726. Under that provision, if the person to be served interposes a door between herself and the process server, the latter may leave the summons outside the door provided the person to be served is made aware that he is doing so. *Lefton v. Freedman*, 163 A.D.2d 360, 559 N.Y.S.2d 330 (2d Dep't 1990). Here, the court credits the testimony of Mr. Farrell that he told Ms. Copeland he was leaving the papers in the waiting area before she exited the room and closed the door.

neither represented to Mr. Farrell that she was so authorized, both were obviously Flavor Innovation employees. Moreover, it is undisputed that Ms. Siano delivered the summons and complaint to Ms. Brach on the date of service. Therefore, in accordance with the expanding interpretations of CPLR § 311 described above, it is respectfully recommended that plaintiff's service on Flavor Innovation be sustained.

## CONCLUSION

For the reasons stated above, the undersigned respectfully recommends that defendants' motion to quash service of the summons and verified complaint be granted in part and denied in part.

Objections to this report and recommendation must be filed with the Clerk of the Court, with a courtesy copy to Judge Bartels, within ten (10) days of receipt to preserve appellate review. *See* 28 U.S.C. § 636(b)(1).

Dated: Brooklyn, New York

February 14, 1996